UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 24-221 |
| AARON TEROD JOHNSON | SECTION I |

## ORDER

Before the Court is defendant Aaron Terod Johnson's ("Johnson") motion[1] *in limine* to preclude inadmissible opinion testimony or, in the alternative, to conduct a *Daubert* hearing to determine if opinion testimony falls under a valid expertise. The government opposed the motion.[2] For the following reasons, the Court **DENIES** Johnson's motion.

### I. BACKGROUND

As is relevant to this motion, Johnson is charged with three counts relating to sex trafficking or transportation of a minor for purposes of engaging in sexual activity: sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2) (Count 1); coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 2); and interstate transportation of a minor for criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count 3).

On October 3, 2025, the government notified counsel for Johnson that it intends to introduce the expert testimony of FBI Special Agent James E. Hardie

---

[1] R. Doc. No. 114.
[2] R. Doc. No. 123.

("Agent Hardie"), who is alleged to be an expert in sex trafficking involving minors.[3] The government's notice explains that Agent Hardie is a member of the FBI's "Critical Incident Response Group, National Center for the Analysis of Violent Crime, Behavioral Analysis Unit," and that "[i]n that role, he is responsible for providing operational support to local, state, federal, and international law enforcement agencies investigating crimes against children, including sex trafficking."[4] The notice also explains that Agent Hardie became a special agent in 2001 and that, since that time, "[h]e has participated in at least 100 sex trafficking investigations" in which he has "interviewed numerous sex traffickers, victims, and sex buyers."[5] "Based on that experience," Agent Hardie has given "presentations and training to law enforcement, government officials, social service professionals, health care professionals, as well as the general public."[6]

The notice also provides a statement of the expert opinions that Agent Hardie plans to include in his testimony.[7] Specifically, the notice states:

> SSA Hardie will testify regarding the methods and techniques of the management of commercial sex (*i.e.*, prostitution). This will include testimony regarding the methods of locating, negotiating, and facilitating commercial sex acts with children and adults by traffickers who are purveyors of commercial sex (colloquially known as "johns" or "sex buyers").
>
> SSA Hardie will also testify about the victim characteristics that traffickers can exploit during the recruitment process. For example, he will testify about the external factors that make a victim more

---

[3] *See* R. Doc. No. 123-1, at 1–2.
[4] *See id.*
[5] *Id.* at 2.
[6] *Id.*
[7] *See id.* at 2–3.

susceptible to recruitment, including volatile home situations, (*e.g.*, homelessness, instability in the household, sexual or physical abuse, issues with school, and runaways), and internal factors (*e.g.*, mental illness, lack of self-esteem, developmental delays, substance abuse).

SSA Hardie will also testify about common factors in victims of trafficking. He will testify that victims often view themselves as having agency and control and explain how the perception of control can be exploited and is often unrealistic and inaccurate. SSA Hardie will also discuss processes traffickers use to exploit these victim characteristics, including employing behaviors to create the appearance of a romanticized, emotional connection between a trafficker and a victim, and the effectiveness of isolating a victim (e.g., emotionally or geographically) as a means of establishing and maintaining control. Traffickers also foster a trust- and loyalty-based relationship with a victim that purports to cater to the needs of the victim in an attempt to indebt the victim to the trafficker and discourage a victim from reporting a trafficker to law enforcement authorities. Relatedly, SSA Hardie will testify about victims' process of disclosing trafficking-related events. For example, he will testify that, when reliving their trafficking, victims often express a wide range of emotions. An individual victim's response may depend on myriad factors, including the life experiences of the victim and the nature and circumstances of the victim's relationship with the trafficker.[8]

On October 14, 2025, Johnson filed the present motion *in limine* to preclude the government from introducing Agent Hardie's "so called 'expert' testimony."[9] He argues that Agent Hardie's proposed testimony is inadmissible because "it is not an area of any actual expertise," and that "[i]n effect, what the Government has proposed to do is elicit testimony from a law enforcement officer wherein the officer testifies that Mr. Johnson's behavior is that of a sexual predator."[10] Further, Johnson

---

[8] *Id.*
[9] R. Doc. No. 114, at 1.
[10] R. Doc. No. 114-1, at 2; *see also* ("[T]he government's 'expert' would testify that he has seen some people behave in a certain way, and those people were sexual predators. And Mr. Johnson behaved in a similar way to those other people, so he must be a sexual predator, too. This is not valid 'expert' testimony.").

3

contends that Agent Hardie is "biased" and that his opinion is not based on any "reliable criteria other than [Agent Hardie's] individual experience and perspective."[11] Johnson argues that the determination of whether Johnson is a sexual predator is "a final determination that is the sole purview of the jury."[12]

The government responds that "numerous courts have found Agent Hardie qualified to be an expert and to provide testimony of the type and scope offered in this case."[13] It contends that "[a] witness may be qualified as an expert by means other than via 'scientific knowledge.' 'Specialized knowledge,' such as law enforcement authorities with prior experience investigating human trafficking, suffices to qualify someone an expert."[14] In fact, the government states that "the Fifth Circuit and district courts within the Fifth Circuit, regularly recognize the use of expert testimony to explain the behavior of those accused of sex offenses," and that Agent Hardie's testimony will be useful to assist the jury in "contextualizing and understanding" the testimony in this case.[15] Because Johnson's exact arguments have "failed . . . time and again," the government asks the Court to "deny Johnson's motion without further hearing or argument."

---

[11] *Id.* at 2–3; *see also id.* at 4 ("Hardie has offered no methodology, scientific or otherwise, for his expert opinion that Mr. Johnson behaved like a sexual predator.").
[12] *Id.* at 4.
[13] R. Doc. No. 123, at 1. The government states that the scope of Agent Hardie's testimony is limited to "(1) methods and techniques used in the . . . management and procurement of commercial sex and (2) common characteristics and factors of victims of sex trafficking." *Id.*
[14] *Id.* at 3.
[15] *Id.* at 4–5 (stating that Agent Hardie's testimony will assist the jury in assessing "the victim's vulnerabilities and any perceived inconsistencies in her testimony and demeanor").

## II.     LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. The proponent of expert testimony bears the burden of establishing its admissibility. *See Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). "District courts have broad discretion to determine the admissibility of expert testimony . . . ." *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 425 (5th Cir. 2024) (internal quotation marks and citation omitted).

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702)). "To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United*

*States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (cleaned up) (internal quotation marks and citation omitted).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court provided an analytical framework to determine the admissibility of expert testimony pursuant to Rule 702. This framework applies to both scientific and non-scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *see also Doe (E.M.B.) v. G6 Hosp., LLC*, No. 23-173, 2025 WL 2556106, at *1 (E.D. Tex. Apr. 23, 2025) ("'[A]ll types of expert testimony, not just scientific testimony,' is permitted under Rule 702." (quoting *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012)). As *Daubert* explains, federal district courts must perform a screening function to ensure both the reliability and helpfulness of expert evidence. *See* 509 U.S. at 589.

The *Daubert* framework principally consists of a two-part inquiry. *See id.* at 592; *see also Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 834 (E.D. La. 2019) (Vance, J.). First, the court must ascertain the reliability of the expert testimony. *Douglas*, 431 F. Supp. 3d at 834. Reliable expert testimony reflects expert knowledge, which encompasses known facts or ideas inferred from known facts, rather than "subjective belief or unsupported speculation." *See Daubert*, 509 U.S. at 590 (explaining that the knowledge requirement of Rule 702(a) "establishes a standard of evidentiary reliability"). Expert knowledge derives from reasoning or methodology that is valid—*i.e.*, it actually supports what it purports to show. *See id.* at 590 n.9, 592–93.

The test for determining reliability is flexible and can adapt to the particular circumstances of the testimony at issue. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 585 (5th Cir. 2003). *Daubert* itself provides an inexhaustive list of factors. *See* 509 U.S. at 593–95. These factors include: (1) whether the technique in question has been or can be tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the scientific community. *Bocanegra*, 320 F.3d at 384–85. A court enjoys "broad latitude" to apply these or other factors that it determines to be "reasonable measures of reliability in a particular case." *Kumho*, 526 U.S. at 149, 153; *see also United States v. Moore*, No. 20-29, 2022 WL 834381 (D. Alaska Mar. 21, 2022) ("Depending on the type of expertise and particular subject of the testimony, these factors may or may not assist in assessing reliability.").

At the second step, the district court must ensure that the expert testimony would be helpful to the trier of fact. *See Douglas*, 431 F. Supp. 3d at 834. Helpful expert testimony is relevant beyond the sense that all evidence must be relevant pursuant to Federal Rule of Evidence 401. *See Bocanegra*, 320 F.3d at 584. Helpful expert testimony is relevant also in the critical sense that it must "fit" the purpose for which it is employed. *See Daubert*, 509 U.S. at 591. Expert testimony fits when the reasoning or methodology underlying it "properly can be applied to the facts in issue" because such reasoning or methodology has a "valid scientific connection to the pertinent inquiry." *See id.* at 592–93.

In addition to fit, expert testimony must be helpful insofar as it provides insight beyond that which the jury could glean for themselves. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). If "the jury could adeptly assess [the evidence] using only their common experience and knowledge," then expert testimony would be unnecessary and therefore properly subject to exclusion. *See id.*; *see also Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003).

To determine the admissibility of expert testimony pursuant to Rule 702, courts apply a preponderance-of-the-evidence standard and are not bound by the rules of evidence—except those rules concerning privileges and Rule 403. *See Daubert*, 509 U.S. at 592 n.10. However, a court's gatekeeping role does not supplant the adversarial process—cross-examination and presentation of contrary evidence are the appropriate means of attacking shaky but admissible testimony. *See Douglas*, 431 F. Supp. 3d at 835. Likewise, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (citation omitted). Even if expert testimony is admissible pursuant to Rule 702, courts must also consider whether the testimony is admissible in accordance with the other applicable rules of evidence, especially Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595; *Douglas*, 431 F. Supp. 3d at 835. The district court must bear in mind that "while [it] must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert

testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (internal alterations omitted).

### III.   ANALYSIS

#### a.   *Scope of permissible testimony*

As a threshold matter, the Court will address the apparent misunderstanding between the parties as to the scope of Agent Hardie's testimony. On one hand, the government paints Agent Hardie's testimony as more general and describes it as including: "(1) methods and techniques used in the . . . management and procurement of commercial sex and (2) common characteristics and factors of victims of sex trafficking."[16] Whereas Johnson maintains that Agent Hardie plans to testify specifically to his "expert opinion that Mr. Johnson behaved like a sexual predator."[17] Having reviewed the statement of Agent Hardie's anticipated testimony, the Court finds his testimony includes opinions of a general nature rather than opinions specific to this case, Johnson, or Minor Victim.[18]

However, to be clear, the Court agrees with Johnson that Agent Hardie may not testify that "Mr. Johnson behaved like a sexual predator" or that he "must be a sexual predator." This testimony would be tantamount to Agent Hardie providing legal opinion and usurping the role of the jury, which is impermissible.

Indeed, "an expert may *never* render conclusions of law." *Reitz v. Woods*, 85 F.4th 780, 788 (5th Cir. 2023) (internal citations omitted) (emphasis in original).

---

[16] R. Doc. No. 123, at 1.
[17] R. Doc. No. 114-1, at 4.
[18] *See* R. Doc. No. 123-1, at 1–2.

9

Likewise, "an expert may not tell the jury what conclusion to reach—that is for the jury to decide." *Doe (E.M.B.) v. G6 Hosp., LLC*, No. 23-173, 2025 WL 2556106, at *4 (E.D. Tex. Apr. 23, 2025) (internal alterations omitted). The U.S. District Court for the Eastern District of Texas addressed the tension between these principles and expert testimony on sex trafficking in *Doe (E.M.B) v. G6 Hospitality, LLC*:

> The issue then becomes how to delineate between a general discussion of human trafficking, which may help the jury better understand the complexities of human sex trafficking and is therefore admissible, and reaching a conclusion as to whether [the alleged victim] was a victim of human trafficking, whether [the defendant] participated in a venture, or whether [the defendants] knew or should have known of sex trafficking, which would usurp the role of the jury.

*Id.* (internal alterations omitted). The court in *Doe* reconciled these "competing interests" by holding that sex trafficking experts

> may testify about human trafficking in general, which includes discussing the general features of human trafficking schemes, but may not offer an opinion on whether [the alleged victim] was a victim of human trafficking, whether [the defendants] participated in a venture, or whether [the defendants] knew or should have known of sex trafficking. Nor will the experts be permitted to characterize the individuals associated with [the defendants] as sex traffickers.

The court reasoned that "[t]his delicate balance will allow the experts to educate and inform the jury on the subtleties of human trafficking, which meets the helpfulness requirement of Rule 702, without directly offering a legal conclusion." *See id.* (internal alterations and quotations omitted). It further stated that "[w]hat [it] wishes to avoid is allowing the experts to apply the facts of this case to their general standards, which would be tantamount to the experts telling the jury what conclusion to reach." *Id.* (internal alterations omitted).

10

Although *Doe* arose under the Trafficking Victims Protection Reauthorization Act, *see* 18 U.S.C. §§ 1581–95, and involved hotel defendants rather than an individual defendant, the Court is persuaded that the scope of permissible expert testimony regarding sex trafficking articulated by the *Doe* court is informative for the instant case.

The Court finds support for this conclusion in the cases cited by the government to support that "Agent Hardie qualifies as an expert based on his specialized knowledge and that his proposed testimony would assist the jury, is not unduly prejudicial, and does not constitute an impermissible characterization of the defendant."[19] The cases cited by the government in this respect all involve testimony by Agent Hardie regarding sex trafficking—including the behavior of trafficking victims, how traffickers often recruit victims, the various ways in which traffickers and victims interact, how traffickers maintain control over their victims, etc.—in general terms, rather than testimony linking his general knowledge to the specific facts of the case. *See, e.g.*, *United States v. Vines*, 9 F.4th 500, 505 (7th Cir. 2021) ("[Agent] Hardie merely provided expert testimony as to sex-trafficking victim behavior *in general* that could cast light on the testimony of other witnesses, but did not tell a jury whom to believe." (emphasis added)); *United States v. Warren*, 774 F. App'x 778, 780 (4th Cir. 2019) ("[Agent] Hardie, who acknowledged that he had no information regarding the facts of [the defendant's] case, testified generally about

---

[19] R. Doc. No. 123, at 6 (collecting cases in which Agent Hardie's testimony regarding sex trafficking was held admissible as expert testimony).

11

human trafficking."); *see also id.* ("[W]e find no abuse of discretion in the district court's allowing [Agent] Hardie to testify broadly about the typical human trafficking experiences of its victims *and the common behaviors of traffickers.*" (emphasis added)); *United States v. Bell*, No. 17-20183, 2022 WL 1014497, at *3 (E.D. Mich. Apr. 5, 2022) ("[Agent] Hardie will likewise give *generalized* testimony that helps contextualize the alleged sex trafficking victims and those who controlled them." (emphasis added)); *Moore*, 2022 WL 834381, at *3 ("The government [states] that it intends to call Agent Hardie as one of its first witnesses and that Agent Hardie 'is not familiar with the facts of this case and will be providing educational testimony without reaching an opinion about this specific case.'").

Again, considering Agent Hardie's proposed testimony as contained in the government's notice, the Court has no reason to anticipate that Agent Hardie will testify impermissibly. Nonetheless, for the sake of clarity, the Court holds that Agent Hardie is not permitted to testify to or opine on any specific facts of this case or comment on the credibility of Johnson or of any other witness. *Cf. Moore*, 2022 WL 834381, at *3 (holding that "Agent Hardie shall not give expert testimony about or opine on any specific facts of this case or comment on the credibility of the defendant or of any other witness").

### b. *Qualifications, Reliability, and Relevance*

Having reviewed Agent Hardie's qualifications and extensive experience,[20] the Court finds that Agent Hardie is qualified to render the proffered opinion testimony.

---

[20] R. Doc. No. 123-1, at 1–2.

*Cf. United States v. Anderson*, 560 F.3d 275, 281 (5th Cir. 2009) (finding that the government's witness "was qualified as an expert based on his experience" as the "director of a center that provides services for runaways and high-risk adolescent victims and that specializes in serving victims of sexual exploitation."). This decision aligns with those of other courts that have found Agent Hardie to be an expert in sex trafficking involving minors. *See, e.g.*, *Bell*, 2022 WL 1014497, at *2 (finding Agent Hardie was qualified as an expert in sex trafficking); *Warren*, 774 F. App'x at 782 ("The district court did not abuse its discretion by qualifying Hardie as an expert witness. Hardie had extensive experience investigating human trafficking, particularly sex trafficking involving children, and through his work he interviewed hundreds of individuals involved in sex trafficking."); *United States v. Jackson*, No. 16-54, 2017 WL 2362351, at *2 (D.S.C. May 31, 2017) ("The court has reviewed the education, work experience, training, certifications, and other relevant information pertaining to Agent Hardie, and finds that he is qualified to offer expert opinion testimony in this [sex trafficking] case."). The Court finds no support for Johnson's suggestion that Agent Hardie's specialized knowledge is not a valid area of expertise or that his extensive experience cannot render him an expert pursuant to Rule 702. *See* FED. R. EVID. 702 ("A witness who is qualified as an expert by *knowledge*, skill, *experience*, training, or education may testify . . ."); *id.* (". . . the expert's scientific, technical, or *other specialized knowledge* will help the trier of fact to understand the evidence or to determine a fact in issue . . ." (emphasis added)).

With respect to reliability, Johnson puts much weight on his argument that Agent Hardie's testimony cannot satisfy the *Daubert* reliability factors.[21] But Johnson must remember that the *Daubert* factors are not an exhaustive list of prerequisites, and, in some cases, the Court may exercise its "broad latitude" to determine reliability of testimony based on only some or none of these factors, as is appropriate for the particular type of expertise or subject of the testimony in this case. *See Kumho*, 526 U.S. at 149, 153; *see also Moore*, 2022 WL 834381, at *2 ("Depending on the type of expertise and particular subject of the testimony, [the *Daubert*] factors may or may not assist in assessing reliability.").

Based on Agent Hardie's qualifications, and like the other courts have found with respect to Agent Hardie's background testimony regarding sex trafficking, the Court finds Agent Hardie's testimony is reliable. *Accord Jackson*, 2017 WL 2362351, at *4 (finding Agent Hardie's background testimony was reliable and stating that "[c]ourts have allowed police detectives and officers to be admitted as experts under *Daubert*, even where the focus is on their vocational knowledge and experience"); *Moore*, 2022 WL 834381, at *4 (finding Agent Hardie's testimony was reliable); *United States v. Edwards*, No. 16-103, 2017 WL 4159365, at *2 (D. Mont. Sept. 19, 2017) (same); *Bell*, 2022 WL 1014497, at *3 (finding Agent Hardie's "generalized

---

[21] *See* R. Doc. No. 114-1, at 4 ("[Agent] Hardie has offered no methodology, scientific or otherwise, for his expert opinion that Mr. Johnson behaved like a sexual predator. As there is no methodology to speak of, there is certainly no peer review or publication of the nonexistent methodology. As such, this Honorable Court certainly cannot consider the error rate of any methodology, or the controls in place to test the standards of any methodology.").

14

testimony" was reliable even though he had not personally examined the victims in the case); *cf. Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*, No. 15-127, 2016 WL 4094980, at *4 (E.D. Tex. Aug. 2, 2016) ("A witness' experience, studies, and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony.").

The Court also finds that Agent Hardie's testimony is relevant to the issues in this case and will be helpful to the jury. The "culture and dynamics of sex trafficking are 'not the subject of common knowledge.'" *United States v. Jenkins*, No. 21-4447, 2024 WL 4891180, at *6 (4th Cir. Nov. 26, 2024), *cert. denied*, 145 S. Ct. 1973 (2025) (quoting *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001)); *see also United States v. Pires*, 138 F.4th 649, 667 (1st Cir. 2025), *cert. denied*, No. 25-5411, 2025 WL 2824416 (U.S. Oct. 6, 2025) ("Common sense, along with our precedent, dictates that the intricacies of the sex-trafficking industry and the typical dynamics between pimps and prostitutes fall well outside the understanding of the average juror."). Agent Hardie's testimony will assist the jury in understanding the behaviors and dynamics of trafficking victims and traffickers as well as assist it in assessing the credibility of the witnesses. *See Pires*, 138 F.4th at 667 (holding that expert witness's testimony about "typical sex-trafficking patterns and common dynamics between sex traffickers and their victims" was relevant because it "illuminated how [the defendant's] romantic relationship with [the victim] could be part of a seduction technique" and "helped the jury assess [the victim's] credibility"); *Warren*, 774 F. App'x at 782 (finding relevant Agent Hardie's testimony in a case involving sex trafficking of a

minor that included "defining a variety of terms used in the human trafficking subculture, how traffickers often recruit victims, the various ways in which traffickers and victims interact, how victims interact with each other, how traffickers maintain control over their victims, the rules that many traffickers impose on their victims, the use of online advertisements, the challenges victims face in getting away from traffickers, and the sense of loyalty a victim sometimes develops for a trafficker"); *Vines*, 9 F.4th at 505 ("Hardie's testimony in this case was based on his expertise as to sex trafficking which would benefit a jury in understanding the behavior of trafficking victims.").[22]

Indeed, the Fifth Circuit has "allowed . . . the use of expert testimony to explain the behavior of those accused of sexual offenses" as well as to "determine the credibility" of witnesses. *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006); *Anderson*, 560 F.3d at 281 (finding that the "expert testimony on pimping patterns and the pimp-prostitute relationship was relevant because it might have shed light

---

[22] Of course, some of Agent Hardie's testimony may be relevant only if evidence of certain concepts or dynamics are before the jury such that Agent Hardie's testimony would aid the jury's understanding of the case. *Cf. Moore*, 2022 WL 834381, at *3 ("As to the conditional relevancy of specialized jargon . . . . Agent Hardie's expert knowledge of terminology used in sex trafficking or prostitution is not relevant unless there will be evidence that the specific terminology has been used in this case. If the terminology was not used in this case, then there is no need for an expert to help the jury understand it."); *Warren*, 774 F. App'x at 782 ("Much of Hardie's testimony related directly to aspects of the victim's testimony and aided the jury in better understanding some of the concepts and events described by the victim and in assessing the victim's credibility. Without Hardie's testimony, the jury would have had no way of determining whether the victim's experiences were common, unique, or implausible."). From the Court's current understanding of the evidence in this case, Agent Hardie's testimony is likely to be relevant and fit the facts in issue.

on critical issues in the case" and "could have helped the jury to determine the credibility of the government's prostitute-witnesses" (internal quotations omitted)).

For these reasons, the Court makes a preliminary determination that Agent Hardie's testimony is admissible.[23] Furthermore, after reviewing the above-cited caselaw, the Court finds that a pre-trial *Daubert* hearing is unnecessary. *Cf. Edwards*, 2017 WL 4159365, at *2 (holding that a pretrial *Daubert* hearing was unnecessary because "the proposed expert testimony . . . does not involve a new scientific theory or novel idea").

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Johnson's motion[24] *in limine* is **DENIED**.

New Orleans, Louisiana, November 13, 2025.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[23] Included in this preliminary determination is that the "probative value" of Agent Hardie's testimony is not "substantially outweighed" by the risk of unfair prejudice. *See* FED. R. EVID. 403. However, the defense may make application to the Court outside the presence of the jury if it has Rule 403 objections to specific testimony elicited at trial. *Accord Moore*, 2022 WL 834381, at *4.

[24] R. Doc. No. 114.