## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    CRIMINAL ACTION

**VERSUS**                                                          No. 24-221

**AARON TEROD JOHNSON**                              SECTION I

### ORDER AND REASONS

Before the Court is the government's motion[1] *in limine* to close the courtroom during the testimony of a minor victim and to bar the use of minor victim's real name at trial. Defendant Aaron Terod Johnson ("Johnson") opposes the motion.[2] For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the government's motion.

## I.    BACKGROUND

As is relevant to this motion, Johnson is charged with three counts: sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2) (Count 1); coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 2); and interstate transportation of a minor for criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count 3).[3] All three counts involve the same minor victim ("Minor Victim").[4]

---

[1] R. Doc. No. 112.
[2] R. Doc. No. 123.
[3] *See generally* R. Doc. No. 51.
[4] *See id.*

According to the government's motion, Minor Victim, who is currently seventeen years-old, intends to testify at trial but has expressed "trepidation and anxiety about testifying in front of an open courtroom."[5] Minor Victim's guardian *ad litem* represents in her affidavit[6] that she believes, "based on [their] discussions," that "Minor Victim would have a hard time sharing the details of what happened to her in an open courtroom."[7] Moreover, Minor Victim's guardian *ad litem* states that she is concerned that Minor Victim "testifying about her sexual abuse in front of a large number of people that she does not know will cause her additional stress, anxiety, fear and shame"[8] and will "cause her additional psychological harm."[9]

In addition, the government has included a letter from Minor Victim's "Human Trafficking Survivor Advocate . . . who has worked with Minor Victim for at least two years."[10] Minor Victim's Human Trafficking Survivor Advocate ("Minor Victim's Advocate") states that she "feel[s] . . . [M]inor [V]ictim will have increased anxiety,

---

[5] R. Doc. No. 112-1, at 3; *see also* R. Doc. No. 160, at 2 ("During our conversation, Minor Victim reported that thinking about the trial was 'stressing' her out.").

[6] R. Doc. No. 160, at 2–3. The Court appointed Carol A. Kolinchak as Minor Victim's guardian *ad litem* on August 27, 2025, pursuant to this Court's General Order Regarding Appointment and Compensation of Guardians Ad Litem, which was promulgated on January 7, 2025 ("General Order"). *See* R. Doc. No. 70. Ms. Kolinchak has experience representing minors and has previously been appointed as a guardian *ad litem* in this Court. She was also formerly the Legal Director of the Juvenile Justice Project of Louisiana, Special Counsel for the Louisiana Center for Children's Rights and a member of the Louisiana Law Institute's Children's Code Committee.

[7] R. Doc. No. 160, at 2; *see also id.* at 3 ("I am concerned that testifying in an open courtroom will . . . negatively impact her ability to testify effectively.").

[8] *Id.* at 2

[9] *Id.* at 3.

[10] *Id.*; *see also id.* at 1 ("I, Stacey McMillin, have been the Common Thread Advocate for the minor victim for the past two years.").

fear, and overall stress if having to testify in an open courtroom."[11] She also states that "Minor [V]ictim is currently experiencing anxiety and some fear over attending" trial, and requests that Minor Victim "be able to have a closed courtroom in order to provide [her] some dignity as the victim in this case."[12] Minor Victim's Advocate also represents that this will "help . . . [M]inor [V]ictim feel more comfortable to provide the most truthful and beneficial testimony openly."[13]

As a result, the government seeks "a narrow closure"[14] of the courtroom during Minor Victim's testimony pursuant to 18 U.S.C. § 3509(e).[15] The closure sought by the government would not exclude court personnel, the defendant, the attorneys, members of the prosecution and defense team, and Minor Victim's Advocate or guardian *ad litem*.[16] The government argues that such closure "presents an overriding interest essential to preserving Minor Victim's personal dignity, safeguarding Minor Victim's physical and psychological well-being, and ensuring the most truthful possible testimony."[17] The government also maintains that its proposed closure is no broader than necessary to protect the interest at stake, particularly because "the proceedings should be recorded, and this recording will likely be

---

[11] *Id.* at 1.

[12] *Id.*

[13] *Id.*

[14] R. Doc. No. 112-1, at 4.

[15] *Id.* at 3.

[16] *See id.* ("[C]losure of the courtroom during Minor Victim's testimony to all persons except . . ., if Minor Victim desires, Minor Victim's guardian-ad-litem and/or advocate . . . .").

[17] *Id.*

transcribed and, ultimately, made available to the public."[18] The government submits that its proposed closure is "both the least invasive and most easily implemented means of protecting Minor Victim's dignity and maximizing the likelihood of obtaining truthful and complete testimony and balancing those rights with the defendant's constitutional rights to a public trial."[19]

The government also seeks an order pursuant to 18 U.S.C. 3509(d)(3) prohibiting the use of Minor Victim's name at trial.[20] Minor Victim's guardian *ad litem* states in her affidavit that Minor Victim "expressed fear about her name becoming public," because she "believes this would put her in danger."[21] Minor Victim also represented to her guardian *ad litem* that she is "worried that her family and friends would learn what happened to her" should her name be made public and that "this would cause her additional shame and embarrassment."[22] Minor Victim's guardian *ad litem* also represents that because Minor Victim "resides in a small community . . . for her, these are very real fears and concerns."[23] Minor Victim's guardian *ad litem* represents in her affidavit that she is concerned that "making [Minor Victim's] name and/or identifying information public would cause her additional and unnecessary fear and anxiety."[24] Minor Victim's Advocate likewise

---

[18] *Id.* at 5.
[19] *Id.* at 6.
[20] *Id.* at 7.
[21] R. Doc. No. 160, at 3.
[22] *Id.*
[23] *Id.*
[24] *Id.*

represents that Minor Victim "fears her name being made public, as well as any details getting out and damaging her name."[25]

Johnson objects to the closure on the ground that generally the Sixth Amendment entitles him to a public trial.[26] Johnson contends that "this right prevents the abuse of judicial power, discourages perjury, encourages unidentified potential witnesses to come forward, and instills in the public the perception that their courts are acting fairly."[27] Additionally, Johnson points out that the public-trial right also protects the interests of the public and the press.[28]

With respect to Johnson's objections to the closure proposed by the government in this case, Johnson states that closure would be "far more prejudicial than probative in the minds of the jury," because "[t]here are negative inferences the jury will take (Defendant is a scary person and this is needed for extra protection, the allegations are so horrific that they cannot be discussed in front of everyday persons, the minor victim is inherently truthful and thus deserves extra credit for her testimony)" should the courtroom be closed.[29] Furthermore, although he acknowledges that the public-trial right may "give way in certain cases to other rights or interests,"[30] he argues that the facts of this case disfavor closure:

---

[25] *Id.* at 1.
[26] R. Doc. No. 135, at 1–3.
[27] *Id.* at 2.
[28] *See id.* ("The public-trial right also protects some interests that do not belong to the defendant. After all, the right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused.").
[29] *Id.* at 3.
[30] *Id.* at 2 (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)).

While the allegations are in fact criminal, there is no element of physical force (beyond consent as a matter of age), minor victim was not shamed or degraded or injured to such a degree that it would shock the conscience, and the allegations are not so unusual or disgusting that they warrant special consideration. While the allegations are obviously traumatic and personal to minor victim, trials occur every day throughout the judicial system where a witness under the age of 18 testifies without closing a courtroom, or where victims of personal crimes testify about those crimes. Moreover, the minor victim is 17, one year away from being considered an adult under the federal system, and is not so young that competency or confusion is a concern.[31]

As for his objection with respect to the use of Minor Victim's real name, Johnson states that "[w]hile there is a plethora of law that provides for the use of initials or other non-identifying information for *written* documents, the Government has cited no case law that specifically permits the Court to bar the use of the minor victim's name at trial."[32] He argues that prohibiting the use of Minor Victim's name would "confuse the jury, and any explanation or limiting instruction to them will only serve to further inflame."[33] He further submits that prohibiting use of Minor Victim's name would give "additional, unwarranted, credence to the allegations against [him]," which is improper because he "is innocent unless and until the Government can prove all elements of the charges against him."[34]

On November 17, 2025, the Court issued a public notice[35] of the motion to close the courtroom during Minor Victim's testimony, in which it invited members of the public and press to submit any objections by 12:00 P.M. on Friday, November 28,

---

[31] *Id.* at 3.
[32] R. Doc. No. 135, at 4 (emphasis in original).
[33] *Id.* at 5.
[34] *See id.*
[35] R. Doc. No. 144.

2025. As of the date of this order and reasons, no opposition has been filed into the record.

## II.    LEGAL STANDARDS

### a.    18 U.S.C. § 3509(e) and the Right to a Public Trial

Title 18, United States Code, section 3509(e) provides:

> When a child testifies the court may order the exclusion from the courtroom of all persons, including members of the press, who do not have a direct interest in the case. Such an order may be made if the court determines on the record that requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate. Such an order shall be narrowly tailored to serve the Government's specific compelling interest.

Of course, a court's ability to close the courtroom pursuant to this statute must not be in contravention of the Constitution. *United States v. Osborne*, 68 F.3d 94, 99 (5th Cir. 1995) (assessing the constitutionality of the courtroom closure as moved for by the government pursuant to 18 U.S.C. § 3509(e)); *United States v. Ledee*, 762 F.3d 224, 229 (2d Cir. 2014) (stating that "the Constitution of the United States circumscribes th[e] discretion" afforded by § 3509(e)).

The Sixth Amendment guarantees criminal defendants the right to a public trial. *United States v. Cervantes*, 706 F.3d 603, 611 (5th Cir. 2013) (citing *Osborne*, 68 F.3d at 98). The right "exists to ensure the fairness of the proceedings and to encourage witnesses to come forward with information." *Osborne*, 68 F.3d at 98; *United States v. Ansari*, 48 F.4th 393, 401–02 (5th Cir. 2022) ("By encouraging witnesses to come forward, discouraging perjury, and enabling the attendance of interested spectators, a public trial advances what the Supreme Court has termed

the 'central aim of a criminal proceeding': trying the accused fairly." (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)). The public-trial right is not absolute. *Cervantes*, 706 F.3d at 611. Rather, it "must be 'balanced against other interests essential to the administration of justice.'" *Ansari*, 48 F.4th at 402 (quoting *Osborne*, 68 F.3d at 98).

The Supreme Court in *Waller v. Georgia* enunciated a four-factor test for determining when a trial "can be closed and not violate the Sixth Amendment's command:"[36] 1) a party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced; 2) the closure must be no broader than necessary to protect that interest; 3) the trial court must consider reasonable alternatives to closing the proceeding; and 4) it must make findings adequate to support the closure. *Osborne*, 68 F.3d at 98. "[T]rial courts are required to consider alternatives to closure even when they are not offered by the parties . . . ." *Presley v. Georgia*, 558 U.S. 209, 214 (2010).

However, this analysis "varies when . . .the challenged closure [is] partial rather than complete." *Cervantes*, 706 F.3d at 611. "When a criminal proceeding is only partially closed, the court must 'look to the particular circumstances of the case to see if the defendant will still receive the safeguards of the public trial guarantee.'" *Id.* (quoting *Osborne*, 68 F.3d at 98). "This is because 'the partial closing of court proceedings does not raise the same constitutional concerns as a total closure because an audience remains to ensure the fairness of the proceedings.'" *Id.* (quoting *Osborne*, 68 F.3d at 98). A decision to partially close a proceeding will be affirmed by the Fifth

---

[36] *Hitt*, 473 F.3d at 154.

Circuit "so long as the lower court had a 'substantial reason' for partially closing [the] proceeding." *Id.* at 611–12 (quoting *Osborne*, 68 F.3d at 98–99); *Ansari*, 48 F.4th at 402. Although "[t]his 'substantial reason' requirement imposes a low bar," *Ansari*, 48 F.4th at 402, the court must still "develop a detailed record of the issues and findings" supporting closure, *Cervantes*, 706 F.3d at 612. *See also Weaver v. Massachusetts*, 582 U.S. 286, 298 (2017) ("A public-trial violation can occur, . . . simply because the trial court omits to make the proper findings before closing the courtroom, even if those findings might have been fully supported by the evidence.").

"The public-trial right also protects some interests that do not belong to the defendant." *Weaver*, 582 U.S. at 298. The right to access criminal trials also belongs to the press and public through the First Amendment. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603–04 (1982) ("[T]he press and general public have a constitutional right of access to criminal trials. . . . Of course, this right of access to criminal trials is not explicitly mentioned in terms in the First Amendment. . . [But] [t]he First Amendment is . . . broad enough to encompass those rights that, while not unambiguously enumerated in the very terms of the Amendment, are nonetheless necessary to the enjoyment of other First Amendment rights."); *see also Weaver*, 582 U.S. at 298–99 ("After all, the right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused.").

Where the First Amendment right to access is implicated, the court "must make 'specific, substantive findings . . . that closure is necessary to protect higher

values and is narrowly tailored to serve such goals.'" *United States v. Ahsani*, 76 F.4th 441, 448 (5th Cir. 2023) (quoting *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 181 (5th Cir. 2011), as revised (June 9, 2011)). "In making its findings, the court must consider any 'reasonable alternatives to closure.'" *Hearst*, 641 F.3d at 181. Additionally, "[w]hen the court does close a proceeding, it should protect the First Amendment right of access by making a transcript of the proceeding available within a reasonable time while safeguarding the interests that justified closing the proceeding in the first place." *Ahsani*, 76 F.4th at 448 (citing *Hearst*, 641 F.3d at 181).

Furthermore, "[i]f a district court is considering closing a proceeding, it must generally provide all interested parties—including the public and the press—notice and an opportunity to be heard." *Id.* How that is accomplished is within the district court's discretion. *Id.* ("The district court has the discretion to determine what form [notice] takes, e.g., docketing the motion to close the proceeding or merely noting on the docket that there is a motion to close a proceeding. Similarly, written briefs may be a sufficient opportunity to be heard, depending on the circumstances." (internal citations omitted)).

### b.    *18 U.S.C. 3509(d)(3)*

Title 18, United States Code, section 3509(d)(3) permits the court, upon motion by any person, to "issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child." 18 U.S.C. § 3509(d)(3)(A). Section 3509(d)(3)(B) goes on

to explain that such protective order may "provide for any other measures that may be necessary to protect the privacy of the child." § 3509(d)(3)(B)(ii).

Courts routinely order, pursuant to § 3509(d)(3), that the names of testifying minor victims not be used during trial, allowing instead the use of pseudonyms, the minor victims' initials, or the minor victims' first name only. *See, e.g.*, *United States v. Anderson*, 139 F.3d 291, 302 (1st Cir. 1998) (affirming the district court's order, pursuant to § 3509(d)(3), that the last names of the juvenile witnesses not be disclosed during the trial to protect their identities); *United States v. Kidd*, 385 F. Supp. 3d 250, 255 (S.D.N.Y. 2019), *aff'd*, No. 22-287, 2023 WL 7290904 (2d Cir. Nov. 6, 2023) ("The Government requests that minor victims be allowed to testify under pseudonyms, consistent with the practice of other courts in this district and as expressly permitted by 18 U.S.C. Section 3509(d)(3)."); *United States v. Porterfield*, No. 20-42, 2022 WL 16918163, at *2 (W.D.N.Y. Nov. 14, 2022) (ordering, pursuant to § 3509(d)(3), that the parties were prohibited from using the minor victim's full name "during the trial and any ancillary proceedings;" "The [minor] victim shall instead be referred to by her first name and last initial, only."); *United States v. Noble*, No. 19-20525, 2021 WL 2980683, at *4 (E.D. Mich. July 15, 2021) (same); *United States v. Gilmore*, No. 99-73, 2009 WL 10697091, at *4 (M.D. Fla. June 4, 2009) (requiring that the minor victim "be referred to b[y] her initials only and that her full name not be used or disclosed on the record in any pleading, filing *or proceeding*" (emphasis added)).

"In applying § 3509, the court must determine whether there is a 'significant possibility' that exposure of the victim's identity 'would be detrimental to the child.'" *Noble*, 2021 WL 2980683, at *4 (quoting 18 U.S.C. § 3509(d)(3)). Courts have found sufficient, for example, evidence indicating that "needless anxiety, negative social stigma, potential harassment, [or] undue embarrassment" could result if the victim's identity were not protected. *See Terranova*, 750 F. Supp. 3d at 26 (internal quotations omitted) ("The Court finds that permitting the John Does . . . to use only first names or pseudonyms will spare the John Does needless embarrassment, anxiety, potential harassment, and social stigma, and will avoid chilling their testimony in the instant case."); *Noble*, 2021 WL 2980683, at *4 ("The government cites the potential of harassment from the media, as well as other adverse personal and professional consequences that could result from her testimony were her identity not protected."). Courts also consider the chilling effect disclosure of a minor victim's identity could have on a victim's willingness to testify. *Terranova*, 750 F. Supp. 3d at 26 ("Courts . . . routinely permit alleged victims of sexual abuse to testify under pseudonyms because requiring them to publicly provide their names could chill their willingness to testify for fear of having their personal histories publicized." (internal quotations omitted)).

Additionally, "[i]n deciding whether to enter a protective order under [§ 3509(d)(3)], a court must weigh the 'testifying witness's interest in anonymity against the defendant's due process and cross examination rights, as well as the rights of the public and the press to access the trial.'" *Id.* (quoting *United States v.*

*Daskal*, No. 21-110, 2023 WL 9424080, at *2 (E.D.N.Y. July 12, 2023)); *Gilmore*, 2009 WL 10697091, at *4 ("While the public interest in access to the full information about witnesses' identities is less significant than the public interest in being present during criminal proceedings, access to this information still implicates the right to participate in informed 'discussion of governmental affairs' and is thus also protected by the First Amendment.").

## III.    ANALYSIS

### a. Partial Closure of the Courtroom

Having considered the parties' briefs, applicable caselaw, the evidence proffered by the government with respect to Minor Victim, and the concerns raised by Johnson, the Court finds it is appropriate to grant the government's motion to close the courtroom for the duration of Minor Victim's testimony with some modifications.

In addition to allowing court personnel, the defendant, the attorneys, members of the prosecution and defense team, and Minor Victim's guardian *ad litem*, Minor Victim's Advocate will also be permitted to be present during Minor Victim's testimony. Both Minor Victim's guardian *ad litem* and Advocate shall sit with the members of the prosecution team, rather than in the gallery, to avoid the appearance of unbalanced public support. The Court will also take a recess prior to partial closure, so that closure of the courtroom may be accomplished outside of the presence of the jury and avoid the jury taking any "negative inferences" from the fact that the courtroom is being closed. Moreover, any member of the public or press will be

permitted to access Minor Victim's testimony by livestream in a nearby courtroom, and a transcript of her testimony will be made available to the public following trial.

The Court finds that the evidence contained in the government's motion, including the supplemental materials from Minor Victim's guardian *ad litem* and Advocate, justify this modified, partial[37] closure which will safeguard Minor Victim's well-being and privacy and protect her from emotional harm. *Cf. Osborne*, 68 F.3d at 99 ("The protection of a minor from emotional harm is a substantial enough reason to defend a limited closing of the proceedings."); *United States v. Hitt*, 473 F.3d 146, 154 n.7 (5th Cir. 2006) (finding that there was "a compelling interest in protecting the privacy and psychological well-being of [a minor victim]" who was sixteen years old at the time he testified during the sex trafficking trial); *see also Globe*, 457 U.S.

---

[37] Fifth Circuit precedent supports that the modified closure taken by the Court is a partial rather than total closure. *See United States v. Atkinson*, No. 21-40470, 2022 WL 2383867, at *3 (5th Cir. July 1, 2022) ("It is particularly difficult to show a 'total' closure where, as here, the district court ordered the audio feed of the undercover agent's testimony to be played in a nearby courtroom, so that nothing was kept from the public."); *Ansari*, 48 F.4th at 401 n.7 ("[The defendant's] contention at oral argument that the courtroom closure was total is puzzling and belied by the record. *Because any member of the public could fully access the trial by livestream in an overflow room down the hall, we deem the closure in this case a partial one* and analyze the issue accordingly." (emphasis added)); *see also id.* at 403 (describing the closure as "largely trivial" because the court had merely "require[d] spectators to watch and listen on livestream rather than in-person"). Nonetheless, the Court also finds, as explained herein, that the modified closure taken by this Court satisfies the *Waller* factors and comports with the Sixth and First Amendments. *Cf. Hitt*, 473 F.3d at 154 n.7 ("We note that this order meets the *Press–Enterprise* closure requirements. There is a compelling interest in protecting the privacy and psychological well-being of [the minor victim]. The closure was also limited to [the minor victim's] testimony, and there have been no reasonable alternatives suggested. The order, with its implicit adoption of the government's motion, contained findings sufficient to justify the closure.").

at 607–08 ("[S]afeguarding the physical and psychological well-being of a minor—is a compelling [interest.] . . . A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim."); *see also United States v. Yazzie*, 743 F.3d 1278, 1291 (9th Cir. 2014) ("The court made reasonable determinations based on its review of the [evidence], the government's assertions, and its commonsense understanding that child victims may have difficulty testifying about sexual abuse in a public setting where the defendant's friends and family are present.").

The Court reaches its decision after consideration of reasonable alternatives[38] and finding that this modified closure is no broader than necessary to protect the particular interests at stake with respect to Minor Victim. *Cf. Yazzie*, 743 F.3d at 1287.

---

[38] The Court notes that although Johnson opposes closure, he does not suggest any reasonable alternatives. *See generally* R. Doc. No. 135. Nevertheless, the Court's modified closure order is a result of its duty to consider reasonable alternatives, *Presley*, 558 U.S. at 214, and its decision that such modified closure is sufficiently narrowly tailored to protecting Minor Victim while also addressing Johnson's concerns and ensuring that he still receives the safeguards of the public trial guarantee. *See Bell v. Jarvis*, 236 F.3d 149, 169 (4th Cir. 2000) ("As an initial premise, we think it reasonable to conclude that the limited nature of the closure directed by the trial judge, and his concern that it be carried out in the most discreet way possible, suggests that he considered the situation and determined the most appropriate means to balance the goal of protecting [the minor victim] with [the defendant's] constitutional right to a public trial."); *Ledee*, 762 F.3d at 230 (affirming the district court even though it had not considered two alternatives that were proffered only on appeal because they were not "reasonable" alternatives; "The district court did not have a duty to consider these alternatives, however, because they are not *reasonable* solutions for ensuring that [the minor victim] would be an uninhibited and effective witness.").

Moreover, the Court finds that the press' and public's ability to contemporaneously access Minor Victim's testimony and public access to the transcript of her testimony following trial is sufficient to "protect[] [Johnson's] interest in a fair trial subject to observation by the public." *See Cervantes*, 706 F.3d at 612; *Ahsani*, 76 F.4th at 448. For these reasons, the Court will order that the courtroom be partially closed for the duration of Minor Victim's testimony, consistent with the modifications articulated herein.

### b.    Use of Minor Victim's Name at Trial

For similar reasons, the Court also finds that there is a "significant possibility" that exposure of Minor Victim's full name at trial "would be detrimental" to her. *See* § 3509(d)(3). The evidence demonstrates that Minor Victim is afraid that her name becoming public "would put her in danger" and that she is concerned about the likelihood that "her family and friends would learn about what happened to her" should her name be made public.[39] Minor Victim's guardian *ad litem* stated in her affidavit that this would "cause [Minor Victim] additional shame and embarrassment" as well as "additional and unnecessary fear and anxiety."[40] Minor Victim lives in a small community which causes additional concern.[41] Johnson does not refute this evidence or otherwise undermine the likelihood that publicizing Minor

---

[39] R. Doc. No. 112-1, at 7; *see also id.* at 3 (Minor Victim's Advocate indicating that she is "concerned that a public trial might result in Minor Victim's identity being known and the effect that may have on the Minor Victim's reputation in the Minor Victim's small community").

[40] R. Doc. No. 160, at 3.

[41] *See id.*

Victim's name at trial would be detrimental to her.[42] And other courts faced with similar evidence and reasons have found them sufficient to justify an order limiting the use of a minor victim's full name at trial. *See, e.g.*, *Noble*, 2021 WL 2980683, at *4; *Terranova*, 750 F. Supp. 3d at 26; *see also United States v. Polk*, No. 19-20107, 2019 WL 3943160, at *2 (E.D. Mich. Aug. 21, 2019) ("As an alleged victim, there is a significant possibility that public disclosure of the witness's last name could be detrimental to the witness."); *United States v. Troup*, No. 12-36, 2012 WL 3818242, at *3 (N.D. Ind. Aug. 31, 2012) ("It is easy to see how the disclosure of a child's name as the victim of a sex offense can be 'detrimental to the child, . . .'").

Furthermore, the Court sees no constitutional bar to ordering that the Minor Victim's name not be used at trial. Johnson knows Minor Victim's name and he does not represent that he has been limited in his ability to investigate his case or will be limited in his ability to cross examine Minor Victim.[43] *See Kidd*, 385 F. Supp. 3d at 255 ("It is well established that permitting witnesses to testify anonymously does not violate a defendant's Sixth Amendment rights."); *Terranova*, 750 F. Supp. 3d at 26–27 ("[D]ivulging the John Does' identities is unnecessary for effective cross-examination because that information is immaterial to [the defendant's] guilt or innocence." (internal quotations omitted)); *Daskal*, 2023 WL 9424080, at *5 (holding

---

[42] *See* R. Doc. No. 135, at 4–5.
[43] *See* R. Doc. No. 112-1, at 8 (stating that the defense has "received discovery without redactions . . . and therefore has all of the information needed to prepare for trial"); *see also Kidd*, 385 F. Supp. 3d at 255 ("Of course, if the Government never produces the victims' real names . . . there may be a Sixth Amendment violation. But the right to know the victims' identity is separate from whether the victims may testify at trial anonymously." (internal citations omitted)).

that allowing the minor victim to testify under her first name "does not impair the Defendant's Sixth Amendment confrontation rights whatsoever. [The defendant] knows the Complaining Witness's name and is free to undertake whatever research he sees fit in advance of trial. . . . [T]he court finds that withholding identifying information about the Complaining Witness from the public where the defendant already knows the Complaining Witness's true identity, will not impair the defendant's ability to cross-examine the alleged victim." (internal quotations and alterations omitted)).

Likewise, this limited restriction on the press and public's access to the Minor Victim's name serves compelling interests, such as, securing the privacy and well-being of Minor Victim and protecting her from the possible adverse consequences of testifying. *See Hitt*, 473 F.3d at 154 n.7; *Porterfield*, 2022 WL 16918163, at *2 ("The Government has compelling interests in (1) limiting identification of the victim in this case to protect her from probable adverse personal, psychological, and professional consequences that would stem from linking her identity to that of a victim of a child pornography crime; and (2) encouraging crime victims to testify by protecting them from the adverse consequences of testifying." (internal quotations omitted)). And the limitation is narrowly tailored because the press and the public will still be able to access Minor Victim's testimony in full in a nearby courtroom. *Cf. Porterfield*, 2022 WL 16918163, at *2 ("[T]he press and the public could still attend trial and follow the testimony and evidence and hear the victim's testimony in full. The only information that would be denied to the public and the press is the victim's full name and her

18

mother's full name."); *Daskal*, No. 21-110, 2023 WL 9424080, at *4 ("[T]he Government's requested limitation on access—non-disclosure of the Complaining Witness's last name—is narrowly tailored because the press and public will be able to see and hear her testify and be present for the entirety of trial."). As the U.S. District Court for the Eastern District of New York stated in *Terranova*, "[t]he 'minor abridgement' of public access caused by withholding specific identifying information will have at most a negligible impact on the public's ability to understand and monitor the proceedings." 750 F. Supp. 3d at 27; *accord United States v. Putillion*, No. 18-00186, 2018 WL 5087238, at *3 (S.D.W. Va. Oct. 18, 2018) ("This limited restriction [of requiring that the minor be referred to by her first and last initials] adequately protects the minor's well-being while preserving the public's right to have open access to the courts, the defendant's right to a public trial, and the defendant's right to confront accusers.").

Turning to the arguments raised by Johnson, the Court finds they are without merit. Johnson's contention that prohibiting the use of Minor Victim's name will "confuse the jury" is unsupported and belied by the many cases in which pseudonyms or initials were used in place of a minor victim's name without issue.[44] *Cf. United States v. Weber*, No. 17-50033, 2020 WL 5531562, at *1 (D.S.D. Sept. 15, 2020) (deciding, due in part to "the number of minor victim witnesses who may be allowed

---

[44] *See supra* p. 11 (collecting cases in which a minor victim's name was anonymized during trial).

to testify at trial," that the parties would "use first names, so that we can all understand what we're talking about").

So too is Johnson's unexplained conclusion that anonymizing Minor Victim's name will "give[] additional, unwarranted, credence to the allegations against" him; any potential prejudice is adequately resolved by an appropriate jury instruction. *See Putillion*, 2018 WL 5087238, at *3 (finding no prejudice where "any perceived prejudice can be resolved with a simple instruction to the jury"); *Daskal*, 2023 WL 9424080, at *5 ("The court believes that an appropriate limiting instruction could ameliorate the potential for bias arising from such an accommodation for the Complaining Witness."); *see also Anderson*, 139 F.3d at 302 (disposing the defendant's argument that the order prohibiting the use of minor witness' last names "lent impermissible credence" to those witnesses as one with "little merit;" "We simply fail to see how this protective order somehow bolstered the government's case, perhaps because [the defendant] makes no attempt to explain it to us.").

For these reasons, the Court orders that Minor Victim shall be referred to by her first name only, consistent with other anticipated evidence and testimony.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the government's motion[45] *in limine* is **GRANTED IN PART AND DENIED IN PART** consistent with the Court's rulings set forth above.

---

[45] R. Doc. No. 112.

New Orleans, Louisiana, December 1, 2025.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**