## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 24-221** |
| **AARON TEROD JOHNSON** | **SECTION I** |

### <u>ORDER AND REASONS</u>

The government noticed its intent to introduce at trial in the above-captioned matter three pieces of evidence of other acts committed by defendant Aaron Terod Johnson ("Johnson") pursuant to Federal Rules of Evidence 404(b) and 413. Johnson filed an opposition[1] to the introduction of the same. The government filed an amended notice in response,[2] to which Johnson filed a reply.[3] With leave of the Court,[4] the government supplemented its response with an additional exhibit containing a transcript of some of the evidence it referenced in its initial notice.[5] The Court orally ruled on the admissibility of this evidence at trial, with written order and reasons to follow.

### I.    BACKGROUND

Johnson is charged with three counts: sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2) (Count 1); coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 2); and

---

[1] *See* R. Doc. No. 66.
[2] R. Doc. No. 72.
[3] R. Doc. No. 80.
[4] R. Doc. No. 137.
[5] *See* R. Doc. No. 136.

interstate transportation of a minor for criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count 3).[6] All three counts involve the same minor victim ("Minor Victim").[7]

The government seeks to introduce the following evidence of other acts committed by Johnson: (1) portions of Johnson's recorded statement that he made upon his arrest and in which he discusses: (a) an incident in which he drove to Monroe, LA, picked up two females, and had commercial sex with one of them (the "Monroe incident"); and (b) his statements that he has had sex with minors in the past; and (2) text message conversations between him and a fifteen year-old minor female ("Minor Victim 2") which demonstrate that Johnson negotiated for commercial sex from Minor Victim 2.[8] It first argues that Johnson's statements are admissible as intrinsic evidence.[9] It also argues, in the alternative, that all of the evidence is admissible as extrinsic, other acts evidence pursuant to Rules 404(b) and 413.[10]

Johnson objects to the introduction of this evidence.[11] He first argues that "while portions of his statement may be intrinsic evidence, certainly not all of it is."[12] He further argues that the evidence is not admissible pursuant to Rules 404(b) and

---

[6] *See generally* R. Doc. No. 51.
[7] *See id.*
[8] R. Doc. No. 72, at 1–2.
[9] *Id.*
[10] *Id.*
[11] *See generally* R. Doc. No. 80.
[12] *Id.* at 2.

413 because they are being offered only to show his propensity to commit the charged offenses.[13]

## II.    LEGAL STANDARDS

### a.  404(b)

Rule 404(b) excludes evidence of prior bad acts if the purpose of its introduction is to make a prohibited propensity argument. *See United States v. Gutierrez-Mendez*, 752 F.3d 418, 423 (5th Cir. 2014) ("Generally, Rule 404(b)(1) excludes evidence of a person's past misdeeds if the sole value of such evidence is to prove the existence of a trait of character, and, from that trait, an inference of particular conduct."); *see also* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

"The purpose of Rule 404(b) is to guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008) (internal quotations omitted). Rule 404(b) "is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule." *See id.* at 353–54 (describing the intrinsic-extrinsic distinction as a "threshold matter"); *see also United States v. Matthews*, No. 24-114, 2025 WL 1697528, at *1 (E.D. La. June 17, 2025) (Vance, J.) ("[B]efore deciding whether Rule 404(b) bars admitting certain evidence, a court must make an

---

[13] *Id.* at 3.

initial inquiry into the relationship between the evidence of the other act and the crimes charged in the indictment."). "'Other acts' evidence is intrinsic when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime." *Crawley*, 533 F.3d at 354.

The Court follows a two-step test for determining whether extrinsic evidence is admissible: "(1) the extrinsic offense evidence is relevant to an issue other than the defendant's character" and (2) the evidence "possesses probative value that is not substantially outweighed by its undue prejudice . . . and meet[s] the other requirements of [Federal Rule of Evidence] 403." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). Rule 404(b)(2) articulates a number of permitted uses for such evidence of prior bad acts: "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The evidence must be relevant to this other issue; the standard for such relevancy is dictated by Rule 401. *See United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013). Furthermore, "[i]n a criminal case, Rule 404(b) evidence must 'be strictly relevant to the particular offense[s] charged.'" *United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016).

"[B]ecause prior bad act evidence is only conditionally relevant," the evidence is also subject to Rule 104(b)'s requirement that "sufficient evidence that the putative bad act actually occurred" is presented. *Gutierrez-Mendez*, 752 F.3d at 423; *see also*

4

Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). "The court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(b). The burden of proof is "preponderance of the evidence." *Gutierrez-Mendez*, 752 F.3d at 424.[14]

Prior bad act evidence is also subject to Rule 403, meaning, the court must determine whether the probative value of the evidence is "substantially outweighed." *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). "In weighing the evidence under Rule 403, the court considers "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Matthews*, 2025 WL 1697528, at *2 (quoting *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015) (quoting *Kinchen*, 729 F.3d at 473)). Additionally, the court "consider[s] the overall prejudicial effect of the extrinsic evidence." *Juarez*, 866 F.3d at 627.

---

[14] "In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Rather, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact—here, that the televisions were stolen—by a preponderance of the evidence." *Id.*

### b. *Rule 413*

Federal Rule of Civil Procedure 413 states: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." This latter sentence indicates that Rule 413 allows for the admission of evidence to show propensity. *See United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) ("Generally, evidence of prior bad acts is not admissible to show propensity. FED. R. EVID. 404(b). Rule 413(a), however, allows the admission of evidence of prior sexual assaults for any relevant purpose, including to show propensity, in sexual assault cases.")

"To be admissible under Rule 413, the uncharged 'offense of sexual assault' need not be established by a conviction." *Id.* (citing *United States v. Guidry*, 456 F.3d 493, 503 (5th Cir. 2006)). Still, "the district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the defendant committed the other act and that it constituted an offense of sexual assault for purposes of Rule 413." *Id.* (internal quotations omitted).

Rule 413(d) defines sexual assault. *See* Fed. R. Evid. 413(d). As is relevant to the present motion, sexual assault is defined as "a crime under federal law or under state law . . . involving: . . . contact, without consent, between any part of the defendant's body–or an object-–and another person's genitals or anus; contact, without consent, between the defendant's genitals or anus and any part of another

person's body; . . . or . . . an attempt or conspiracy to engage in conduct described [above.]"

"Evidence admissible pursuant to Rule 413 is still subject to the Rule 403 balancing test." *United States v. Dillon*, No. 05-314, 2006 WL 950104, at *2 (E.D. La. Apr. 10, 2006) (Africk, J.), *aff'd*, 532 F.3d 379 (5th Cir. 2008).

### III.    ANALYSIS

#### a. *Intrinsic Evidence*

The government argues that certain evidence is "intrinsic."[15] Specifically, the recorded *Mirandized* statements Johnson made to law enforcement following his arrest (1) about the Monroe incident and (2) that "he has had sex with underage girls at times and at other times did not ask enough questions about girls' ages."[16] The government represents that this information provides "background and context" to Johnson's later recorded confession to transporting and having sex with Minor Victim.[17] According to the government, the statements are intrinsic because they are "inextricably intertwin[ed]" with his subsequent confession.[18]

Johnson contests that the proffered statements are intrinsic evidence, because they are not "so inextricably intertwined" or necessary to complete the story of the crime.[19] He argues that "[m]erely because Mr. Johnson made statements about one act, and then another act, does not mean they are so intertwined as to be unable to

---

[15] *See* R. Doc. No. 72, at 15.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] R. Doc. No. 80, at 3.

present the Government's case without this other bad act evidence."[20] The Court agrees with Johnson.

The government relies on *United States v. Durham*, in which the Tenth Circuit found that the district court had not abused its discretion by holding certain video confessions made by the defendant were intrinsic rather than Rule 404(b) evidence. 902 F.3d 1180, 1224 (10th Cir. 2018). Specifically, the Tenth Circuit held that the district court did not err in finding that the defendant's statements that he struggled with "a temptation to touch children and to be with other men" were intrinsic to his offense of traveling abroad and engaging in noncommercial sexual acts with minors, because "they provided 'contextual or background information' regarding his actions when confronted with the allegations against him and his confession" on video. *Id.* at 1225. The Tenth Circuit also found it irrelevant that the statements were made after the charged conduct had occurred, because they bore directly on his response to the present allegations against him. *See id.* ("Although [the defendant] made his statements after the charged conduct, they were nonetheless intrinsic evidence because they bear directly on his response to the allegations against him." (internal alterations and quotations omitted)).

Although Johnson's statements arise from his interview with agents following his arrest for the instant offenses, the Court cannot analogize Johnson's statements regarding the Monroe incident to the statements made by the defendant in *Durham*. For one, Johnson's statements about the Monroe incident were made spontaneously

---

[20] *Id.*

8

at the start of the interview, due to his erroneous belief that he was being arrested because of his conduct with respect to the Monroe incident.[21] Similarly, his statements regarding prior instances of sex with minor girls seem to follow from his telling of the Monroe incident, rather than as an explanation of his conduct with respect to Minor Victim.[22] Additionally, Johnson's arrest and statement occurred in August 2024, five months after the incident with Minor Victim allegedly occurred.[23]

In this way, Johnson's statements are more like those made by the defendant in *United States v. Kinchen*, who was charged with a single count of distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). *See generally* 729 F.3d 466 (5th Cir. 2013). In that case, the government sought to admit testimony from an officer that had stopped and searched the defendant in a separate instance, in which the officer would testify that he found the defendant in possession of drugs and that the defendant had told him that he sold crack cocaine "because he did not know how to do anything else and that he had mouths to feed." *Id.* at 470. The district court held that the evidence was admissible as intrinsic evidence or, in the alternative, that it was admissible pursuant to Rule 404(b) because "it was relevant to either identity, motive, or intent because it showed that [the defendant] was a dealer, rather than merely a user, of cocaine." *Id.* at 471.

---

[21] R. Doc. No. 72, at 15; *see also* R. Doc. No. 136-2, at 1–2 ("SA Theriot: Alright. So I know when we were out by your apartment, you had mentioned that you kind of thought you knew what what this was about. . . . SA Zuppardo: Ok. So tell us more about like what happened, that altercation, and where was that, tell us about that, and how that all started.").

[22] *See* R. Doc. No. 136-2, at 13–14.

[23] R. Doc. No. 72, at 6.

The Fifth Circuit disagreed, concluding that "the district court was incorrect in stating that the testimony regarding the prior possession and concomitant statement was intrinsic." *Id.* In so holding, the Fifth Circuit noted that "[t]here [wa]s no evidence linking that earlier possession to the [charged] drug deal." *Id.* It also noted the temporal distance between the two incidents. *See id.*

As this Court has recently stated in another case, "evidence is not inextricably intertwined with evidence of the charged offenses simply because it is evidence of the investigation of the crime." *United States v. Dominick*, No. 24-44, 2025 WL 1593077, at *4 (E.D. La. June 5, 2025) (Africk, J.) (declining to admit evidence of the defendant's possession of a handgun on a separate occasion despite the government's assertion that this evidence was admissible to show "context . . . for the search and how this case came to be"). Like the case in *Dominick*, "[t]he government does not explain why its evidence of the charged offenses could not be introduced independently of the [extrinsic evidence.]"[24] Accordingly, the Court finds that the evidence at issue is not intrinsic evidence and, therefore, is subject to Rule 404(b). *Crawley*, 533 F.3d at 353–54.

---

[24] Although the government represents that Johnson's admission of prior instances he has had sex with minors "were made immediately preceding his statements about Minor Victim" and that "Johnson used Minor Victim as an example of one of the underage girls with whom he has had sex," the government has not provided the Court with Johnson's confession with respect to Minor Victim such that it could determine whether these statements were necessary to understanding Johnson's subsequent confession. *See Dominick*, 2025 WL 1593077, at *4. Nevertheless, because the Court finds this evidence is admissible on other grounds, *see infra* subsection III(b)(i), it is not necessary to examine how the statements are intertwined with Johnson's later confession in order for them to be admissible.

### b. *Extrinsic Evidence – Rule 404(b)*

i. The Monroe incident

The government argues that Johnson's statements regarding the Monroe incident show that "Johnson has a *modus operandi* of driving long distances to have sex with younger females in exchange for money, arguing with the females, and then claiming that he was 'baited' into [the] whole situation and being 'blackmailed.'"[25]

The government further represents that the Monroe incident is relevant to Johnson's intent because Johnson claims that "he paid Minor Victim, and later had sex with Minor Victim, because she was blackmailing him," and thus, the fact that he offered "the same excuses when describing the Monroe incident" renders less plausible that he had innocent intent.[26] Furthermore, the government states that Johnson's admission that he had sex with one of the women in exchange for money during the Monroe incident is relevant to his intent when transporting Minor Victim because it shows that Johnson has a "pattern of driving to another town to meet with females for the purpose of commercial sex."[27]

Regardless of whether this evidence is admissible pursuant to Rule 404(b), the Court agrees with Johnson that his statements with respect to the Monroe incident contain statements about illegal substance use,[28] threatened use of a firearm to harm

---

[25] R. Doc. No. 72, at 16.
[26] *See id.*
[27] *Id.*
[28] *See* R. Doc. No. 136-2, at 3.

11

the females and a baby,[29] and admission to prostitution,[30] all of which have the potential of unfair prejudice. The Monroe incident also requires considerable time and has the potential to confuse the jury. *United States v. Yi*, 460 F.3d 623, 633 (5th Cir. 2006) ("Some 'hallmarks of highly prejudicial evidence" include 'violent acts,' . . . and acts that 'occupy more of the jury's time than the evidence of the charged offenses.'").

At this juncture the Court finds that the probative value of the Monroe incident evidence is substantially outweighed by the possibility of undue prejudice and confusing the issues. *See* FED. R. EVID. 403. Accordingly, the Court orders that the government shall not use evidence of the Monroe incident in its case-in-chief.

### ii. Statements about past sex with minors

According to the government, Johnson's statements about having had sex with minors in the past are relevant to his intent and motive.[31] Johnson's statements include an admission that he has "been involved with girls 17 before" and that on at least two occasions he had sex with a minor knowing she was under 18 years old.[32] He also stated that there have "been times that [he] ha[s] been approached, and [he] might, might not ask enough questions" about a female's age.[33]

Johnson, for his part, suggests that this evidence is relevant only to show propensity and is being introduced only to show that Johnson "is a bad person acting

---

[29] *Id.* at 7.
[30] *Id.* at 12.
[31] *See* R. Doc. No. 72, at 17.
[32] *See* R. Doc. No. 136-2, at 14–16.
[33] *Id.* at 14.

in conformity therewith."[34] Further, Johnson argues that even if relevant for a permissible purpose, the evidence is nonetheless unduly prejudicial and inadmissible pursuant to Rule 403.[35]

First, the jury could reasonably conclude that Johnson's prior sexual acts with minors occurred, and that Johnson was the person who committed those acts. *Cf. United States v. Turner*, No. 21-40634, 2022 WL 4009180, at *3 (5th Cir. Sept. 2, 2022) ("The Government plainly met its burden of establishing that [the defendant] was arrested in 2009. [The defendant] himself volunteered that the arrest occurred . . . . [The defendant] provides no evidence to suggest that he was lying to officers when he recounted these facts.").

As for relevance, the government directs the Court to the Fifth Circuit's holding in *United States v. Santos*, in which it found admissible under Rule 404(b) the defendant's confession during a post-arrest interview that he was "sexually attracted to underaged boys" and that "he had engaged in sexual contact in the Philippines with about 15 underaged boys [in the past]." *See* No. 21-10381, 2022 WL 1196761, at *1 (5th Cir. Apr. 22, 2022). The Fifth Circuit found that this evidence "showing that [the defendant] was sexually attracted to underaged boys and had acted on that attraction in the past was highly probative of [the defendant's] intent, motive, and knowledge" with respect to a charge pursuant to § 2422(b). *Id.* at *2.

---

[34] R. Doc. No. 80, at 4.
[35] *Id.*

Count 2, which charges Johnson with violation of § 2422(b), also requires that Johnson believed Minor Victim was less than 18 years old. In Johnson's recorded statement he states that he only learned that Minor Victim was sixteen years old after having sex with her the first time.[36] His admission that he's had sex with minors in the past casts doubt on his claim that he did not believe she was a minor. *Cf. United States v. Wolford*, 386 F. App'x 479, 484 (5th Cir. 2010) (holding admissible transcripts of the defendant's online conversations with anonymous third parties that "contain[ed] statements from [the defendant] expressing an interest in having sex with minor children and his assertion that he had previously raped a minor" because they "cast doubt on [the defendant's] assertion that, when chatting with [the minor victim], he believed he was roleplaying with another adult," for purposes of § 2422).

This evidence is also probative of whether Johnson had the requisite criminal intent to engage in illicit sexual activity with Minor Victim. *See United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) ("Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children."); *United States v. Ruiz*, 701 F. App'x 871, 875 (11th Cir. 2017) ("Evidence indicating that [the defendant] was sexually interested in young boys makes it more likely that he intended to persuade or entice a 13-year-old boy to engage in sexual activity with him.").

---

[36] *See also* R. Doc. No. 72, at 18.

Although the statements are "undoubtedly prejudicial," *cf. id.*, the Court cannot find in light of this precedent and Johnson's proffered defense that any prejudice is unfairly prejudicial. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only [u]nfair prejudice, [s]ubstantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.").

###### iii.   Evidence relating to Minor Victim 2

The government argues that the text conversations with Minor Victim 2 are relevant to Johnson's motive, knowledge, and intent and, additionally, demonstrate his *modus operandi*.[37] The government represents that Johnson has claimed during jail calls that "he did not know that Minor Victim was underage until he had already transported her across state lines, at which point he only paid her because she blackmailed him."[38] According to the government, the text message evidence with respect to Minor Victim 2 therefore shows that "Johnson knew that Minor Victim was underage from the inception, because it shows that Johnson would not have been deterred by such a disclosure."[39]

Additionally, the government argues that the "parallels" between Johnson's interactions with Minor Victim and Minor Victim 2, both of whom are teenage runaways, show Johnson has a "modus operandi of exploiting vulnerable teens who

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

are unlikely to have resources to refuse him or a community to assist them."[40] Likewise, the government contends that the evidence with respect to Minor Victim 2 also "undermines Johnson's claim that Minor Victim withheld her age until after Johnson transported her and then sprang the information on him as leverage to extract a payment."[41]

First, the jury could reasonably conclude that the text message conversation with Minor Victim 2 occurred, and that Johnson was the person with whom Minor Victim 2 was texting. The jury could find from testimony elicited at trial that the messages extracted from the phones were seized from Johnson upon his arrest and searched pursuant to a federal search warrant.[42] Also, Minor Victim 2 testified at trial to authenticate the text message conversation between her and Johnson.[43] *Cf. United States v. Sims*, 550 F. Supp. 3d 907, 915 (D. Nev. 2021) (finding that there was "sufficient evidence of the Defendant's prior conduct because the Defendant's previous victims will be testifying to this conduct"). Moreover, Johnson does not refute that the text message exchange occurred or that he sent these text messages.[44]

Johnson's conversation with Minor Victim 2 is relevant to whether Johnson believed Minor Victim was a minor, an element of § 2422(b), because his interactions with Minor Victim 2, who he likely believed was a minor because she told him she

---

[40] *Id.*

[41] *Id.*

[42] R. Doc. No. 72, at 9.

[43] Johnson objected to the government introducing its Rule 404(b) evidence "without the actual witnesses to testify to the same." R. Doc. No. 80, at 4.

[44] *See generally id.*

was 15 years old,[45] are similar to his interactions with Minor Victim. *Cf. United States v. Monsivais*, 737 F. App'x 668, 672 (5th Cir. 2018) (finding "highly relevant" to the issue of whether the defendant "believed" the minor victim was under 18 years old, for purposes of conviction pursuant to § 2422(b), evidence of the defendant's similar conversation with another person he "likely believed was a child").

Likewise, the text messages with Minor Victim 2 are relevant to demonstrate both Johnson's intent and motive. Johnson's texts to Minor Victim 2 plausibly indicate that he planned to drive over an hour away to pick up Minor Victim 2 and that he intended to have sex with Minor Victim 2 once they returned.[46] Johnson has explicitly put his intent and motive at issue by claiming that he only brought Minor Victim to New Orleans to "help" her, and not because he intended to have commercial sex with her.[47] The similarities between Johnson's interactions with Minor Vitim and Minor Victim 2 are relevant to whether Johnson had the requisite intent and whether a dominant motive of his travel from Mississippi to Louisiana was his intent to engage in illicit sexual activity with Minor Victim. *See Beechum*, 582 F.2d at 911 ("[B]ecause the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense."); *United States v. Hite*, 916 F. Supp. 2d 110, 121

---

[45] R. Doc. No. 72-1, at 13.

[46] *Id.* at 5 (Minor Victim 2's text to Johnson: "Whachu tryn do[?];" Johnson's reply: "Fuck"); *id.* at 32 (Johnson's text to Minor Victim 2: "It's just an hour drive"); *id.* at 34 ("On the way"); *id.* at 42 (". . . I'm trippin on me havin to drive all the way to Laplace to turn around"); *id.* at 45 ("You prolly can't even fuck or suck no dick Fareal, but want me to pay you 350 . . .); *see also id.* at 47 (Johnson texting Minor Victim 2 four days after learning her age: "You busy;" "Tryna come get you").

[47] *See* R. Doc. No. 72, at 16.

(D.D.C. 2013) ("[E]vidence the Defendant engaged in explicit discussions of sexual contact with minors, regardless of whether or not he followed through with plans to meet in person, is probative of his intent to entice or coerce the minors to engage in illicit sexual activity.").

In balancing the probative value of this evidence against the potential prejudice, the Court finds that any prejudice does not substantially outweigh its probative value. Johnson's texts with Minor Victim 2 are no greater in magnitude or more violent than Johnson's acts with respect to Minor Victim. *See Yi*, 460 F.3d at 633; *United States v. Robinson*, 702 F.3d 22, 37–38 (2d Cir. 2012) (upholding the district court's Rule 403 determination because the "evidence was no more inflammatory than the child sex trafficking charges involving" the minor victim). Moreover, the other factors this Court considers—namely, the government's need for the extrinsic evidence, the similarity between the extrinsic and charged offenses, the amount of time separating the two offenses, and the court's limiting instructions—weigh in favor of admitting the evidence. In addition to the similarities between Johnson's interactions with Minor Victim and Minor Victim 2, the two interactions come less than a month apart.[48] And in light of Johnson's claims with respect to his belief, intent, and motive, the government has great need for this evidence which renders Johnson's claims less plausible.

For these reasons, the Court will permit the government to introduce this evidence pursuant to Rule 404(b) in its case-in-chief.

---

[48] *See* R. Doc. No. 72-1.

### c. *Rule 413*

The government additionally argues that Rule 413 allows for the introduction of Johnson's statements indicating that he has had sex with minors in the past and the text messages with Minor Victim 2.[49]

As a threshold matter, the government argues that Johnson is charged with sexual assault because he is charged with having commercial sex with a minor, and "minors lack the capacity to consent, and so sexual contact with a minor is always without consent."[50] For this same reason, the government argues that Johnson's statements that he has had sex with minors in the past necessarily involve sexual assault because he is admitting to having "contact, without consent, between the [his] genitals . . . and any part of another person's body."[51] *See also* Rule 413(d)(3). As for the evidence involving Minor Victim 2, the government contends that this constitutes an attempted sexual assault pursuant to Rule 413(d), which includes attempted sexual assault in the definition of sexual assault.

Johnson does not contest that Rule 413 applies, rather, he argues that this evidence "is still subject to the balancing test of [Rule] 403," and should be excluded on that ground.[52] The Court disagrees with Johnson.

---

[49] *See* R. Doc. No. 72, at 20–21.
[50] *Id.* at 21 (quoting *United States v. Rogers*, 587 F. 3d 816, 820 (7th Cir. 2009) (finding that "sexual assault" under Rule 413 included "attempted non-forcible sexual contact with a minor")).
[51] *Id.*
[52] *See* R. Doc. No. 80, at 5–6.

In *United States v. Lewis*, the Fifth Circuit upheld the inclusion of prior instances in which the defendant had sex with minor girls pursuant to Rule 413 as relevant evidence toward his § 2423(a) charges. *See generally* 796 F.3d 543 (5th Cir. 2015). With respect to these charges, the Fifth Circuit noted that he had "not use[d] physical force against the girls to have sex with them" but that they were each fourteen years old when he first had sex with them. *See id.* at 544.

Implicit in the Fifth Circuit's holding that Rule 413 applies is that a defendant transporting a minor across state lines with the intent that they engage in criminal sexual activity, without evidence of use of physical force, can constitute sexual assault for purposes of Rule 413. *See* Rule 413 (stating that the Rule applies "[i]n a criminal case in which a defendant is accused of a sexual assault . . ."). As relied on by the government, the Seventh Circuit came to this conclusion explicitly in *United States v. Rogers*, holding that there is nothing in the construction of Rule 413 to suggest that "Congress meant 'consent' to mean anything other than its general legal definition." 587 F.3d 816, 820 (7th Cir. 2009) (disagreeing with the district court's interpretation of consent that found "an attempt to have sex with a minor could be consensual for the purpose of Rule 413 if the minor willingly participated" because as a matter of law "[m]inors lack the capacity to consent").[53]

---

[53] The Court notes that in *United States v. Martinez*, the Fifth Circuit chose not to resolve what it described as "the difficult 413 question" raised by the defendant in that case. *See* No. 21-10383, 2022 WL 2315877, at *1 (5th Cir. June 28, 2022). There, the defendant had been charged with enticing an eleven-year-old to engage in sexual activity in violation of § 2422(b). *See id.* The defendant had argued on appeal that he was not charged with a sexual assault offense, the necessary prerequisite to application of Rule 413, but rather was charged with "attempted solicitation." *See*

As stated previously, Johnson does not contend that Rule 413 does not apply to the charges he faces.[54] Moreover, the government argued and presented evidence at trial that Johnson did, in fact, have sex with Minor Victim.[55] In light of this, and the Fifth Circuit's implicit holding in *Lewis*, the Court finds that Johnson was charged with sexual assault as defined in Rule 413(d). For similar reasons, the Court finds that Johnson's statements that he has had sex with minors in the past are evidence of prior sexual assaults as defined in Rule 413(d).[56]

With respect to relevance, evidence that Johnson has had sex with minors is probative of his proclivity for having sex with underage girls, which is relevant to whether he had the requisite criminal intent with respect to all three charges. *See, e.g.*, *Lewis*, 796 F.3d at 547 ("A proclivity for having sex with underage girls made it significantly more likely that he transported the named victims across state lines

---

*United States of America, Plaintiff-Appellee, v. John David Martinez, Defendant-Appellant*, 2022 WL 357454, at *2 (arguing that § 2422(b) criminalizes an attempt to achieve a mental state rather than the performance of the sexual acts themselves). In so doing, the defendant advocated for a finding that "a charge under § 2422(b) does not automatically make it an accusation of attempted sexual assault," and instead "[a] court must look at what the government proved." *Id.* at *5. Rather than deciding the question, the Fifth Circuit held that the district court had properly admitted the evidence that the defendant had, or attempted to, sexually assault a number of victims when they were young under Rule 404(b). In the present case, and unlike the defendant in *Martinez*, Johnson has not argued that Rule 413 does not apply to the charges he faces. *See generally* R. Doc. No. 80 Moreover, unlike the defendant in *Martinez*, Johnson has not been charged with an attempted violation of § 2422(b). *See* R. Doc. No. 51.

[54] *See generally* R. Doc. No. 80.

[55] *See also* R. Doc. No. 72, at 4.

[56] *See* R. Doc. No. 136-2, at 16.

with the intent that they engage in criminal sexual activity, which was an element of 18 U.S.C. § 2423(a), the charged crime.").

Like the Court found above, this evidence's probative value is not substantially outweighed by any danger of undue prejudice.[57] The Court will also mitigate any potential for unfair prejudice by instructing the jury appropriately. *Cf. id.* at 548 ("[A]ny potential for unfair prejudice here was mitigated by the district court's careful instruction to the jury that 'you are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or offense not alleged in the indictment.'" (internal alterations omitted)). Accordingly, the Court finds that, in the alternative to its Rule 404(b) ruling *supra*, the evidence of Johnson's statements[58] that he has had sex with minors in the past is admissible pursuant to Rule 413.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the Court grants and denies the introduction of the government's noticed Rules 404(b) and 413 evidence consistent with the Court's rulings set forth above.

New Orleans, Louisiana, December 10, 2025.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[57] *See supra* p. 15.
[58] R. Doc. No. 136-2, at 14–16.