**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 24-221** |
| **AARON TEROD JOHNSON** | **SECTION I** |

**ORDER AND REASONS**

Defendant Aaron Terod Johnson ("Johnson") was charged in a three-count superseding indictment with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2) (Count 1), coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 2), and interstate transportation of a minor for criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count 3).[1] On December 10, 2025, Johnson was convicted as to Counts 1 and 2 and acquitted as to Count 3.[2]

A draft presentence investigation report ("PSR") was prepared and filed into the record by U.S. Probation on February 11, 2026.[3] Both Johnson and the government filed objections to the draft PSR.[4] The final PSR rejects every objection raised by Johnson and the government.[5]

The government's sole objection was to the draft PSR's exclusion of the vulnerable victim enhancement, pursuant to United States Sentencing Guideline

---

[1] *See generally* R. Doc. No. 51.
[2] *See* R. Doc. No. 169.
[3] *See* R. Doc. No. 179.
[4] *See* R. Doc. Nos. 180–181.
[5] R. Doc. No. 191, at 26–29.

("U.S.S.G") §3A1.1(b)(1).[6] Johnson lodged four objections: first, he objected to the assessment of criminal history points with respect to two prior marijuana possession convictions, arguing that these convictions should be excluded pursuant to U.S.S.G. §4A1.2(c); second, he objects to the application of the enhancement for "repeat and dangerous sex offender against minors," pursuant to §4B1.5(b)(1); third, he objects to the imposition of §2G1.3(b)(2), arguing that he did not unduly influence Minor Victim; and fourth, he objects to the information in paragraphs 12 and 20 because it is based "solely on information provided by the minor victim in this case, and [was] not supported by testimony or any other evidence produced at trial," and therefore, he argues, it is unreliable.[7] The government and Johnson each filed a response in opposition to the opposing party's objections.[8]

For the reasons set forth herein, the Court **SUSTAINS** the government's objection and **OVERRULES** Johnson's objections.

## I.    LAW AND ANALYSIS

### a.  Government's objection

The government's sole objection is to the PSR's failure to include a victim-related adjustment, pursuant to §3A1.1(b), to account for Minor Victim's "particular

---

[6] *See generally* R. Doc. No. 180.
[7] *See generally* R. Doc. No. 181.
[8] *See* R. Doc. Nos. 188, 189.

vulnerability."[9] Section 3A1.1(b) states: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels."

The corresponding application note explains that a "vulnerable victim" is "a person (A) who is a victim of the offense of conviction . . . and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." §3A1.1(b) cmt. n.2. It goes on to explain that the vulnerable victim adjustment applies only when "the defendant knows or should have known of the victim's unusual vulnerability." *Id.* As an example, the application notes state that the adjustment would apply

> in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile.

*Id.* The Fifth Circuit does not require that the defendant specifically "chose victims based on vulnerability, but only that he knew or should have known of the vulnerability." *United States v. Dock*, 426 F.3d 269, 274 (5th Cir. 2005); *United States v. Smith*, 115 F.4th 370, 376 (5th Cir. 2024) ("We have not required a specific 'targeting' of a vulnerable victim . . . ." (internal alterations omitted)).

Application note 2 also explains that the vulnerable victim adjustment is not applied "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." *Id.* As an example, the commentary states that "if the offense guideline provides an enhancement for the age of the victim, this subsection would

---

[9] R. Doc. No. 180, at 1.

not be applied unless the victim was unusually vulnerable for reasons unrelated to age." *Id.*

The Fifth Circuit has rejected an interpretation of this application note "that would preclude the vulnerable-victim adjustment from ever being applied to account for a vulnerability that is *related to* age." *See Smith*, 115 F.4th at 377 (emphasis in original) (quoting *United States v. Ramos*, 739 F.3d 250, 252 (5th Cir. 2014) (citing *United States v. Jenkins*, 712 F.3d 209, 214 (5th Cir. 2013)). Instead, "the application of the vulnerable-victim enhancement based on age-related factors is barred only where the victim's vulnerability is . . . fully incorporated into the offense guidelines." *Id.*

Where a minor victim's age-related vulnerability renders her "relatively more vulnerable than an otherwise similarly situated" minor victim, consideration of age-related factors toward application of the adjustment is permissible. *See id.* (holding that the minor victim's age-related vulnerability at thirteen years old was not "fully incorporated into the guidelines" because her age makes her "relatively more vulnerable" than a seventeen-year-old); *see also Jenkins*, 712 F.3d at 214 (finding no "logical reason why a 'victim under the age of twelve' enhancement should bar application of the 'vulnerable victim' enhancement when the victim[s]," a majority of whom were between the ages of 7 and 10 and some of whom were infants and toddlers, were "especially vulnerable, even as compared to most children under twelve"); *United States v. Wilcox*, 631 F.3d 740, 755 (5th Cir. 2011) (permitting application of the vulnerable victim adjustment based in part on the minor victims' age-related

4

"impressionability," even though the victims' minority status was prerequisite to a kidnapping conviction).

According to the government, the vulnerable victim adjustment is appropriate because Minor Victim was "especially vulnerable" due to factors aside from her age and Johnson "knew of, and exploited, that vulnerability."[10] The government asserts that the evidence elicited at trial revealed that Minor Victim had a history of running away and that Johnson knew she was a runaway; to wit: there was evidence supporting that Johnson "had a copy of [Minor Victim's] social media profile saved in his phone, and [that] he told Minor Victim he had seen her missing persons report."[11] The government also notes that the offense was prompted by Minor Victim telling Johnson that she was "stranded in Vicksburg, Mississippi, with little money and no place to stay."[12] Johnson then traveled to Mississippi, retrieved Minor Victim, and brought her back to his apartment in New Orleans "in an area unfamiliar to Minor Victim."[13] The government further submits that other evidence presented at trial demonstrated that subsequent interactions between Johnson and Minor Victim occurred because Minor Victim was hungry and did not have money or anyone to support her.[14]

It is the government's position that Minor Victim was vulnerable beyond her minority status "because she had history of running away, lacked appropriate

---

[10] *See* R. Doc. No. 180, at 3.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

parental guidance or support, was unhoused, had food insecurity, lacked any means of transportation, and was stranded in a strange city (first in Vicksburg and then in New Orleans)."[15] The government contends that Minor Victim was desperate and, therefore, was more "susceptible" to Johnson's criminal conduct.[16] Indeed, the government asserts that her "weakness" is why Johnson preyed upon her.[17]

Johnson takes a different view of the evidence elicited at trial. He argues that despite any allegation that he was aware that Minor Victim was a runaway, "Agent Theriot admitted on the stand that the government did not find any proof on [his] phone that he ever searched or saw those missing bulletins."[18] He also notes that the evidence at trial revealed that Minor Victim's friend, who Johnson also picked up from the hotel in Mississippi, was "an adult who was accompanying" Minor Victim.[19] He submits that this undermines "the idea that [Minor Victim] was particularly vulnerable and alone, as there was another adult with her."[20] Additionally, he re-urges the same arguments previously rejected by the jury and this Court that the evidence demonstrates that he did *not* know Minor Victim was a minor.[21]

---

[15] *Id.*

[16] *See id.* at 3–4.

[17] *Id.* at 4.

[18] R. Doc. No. 189, at 2.

[19] *Id.*

[20] *Id.*

[21] *See id.*; *see also* R. Doc. No. 176, at 5–6 (denying Johnson's motion for new trial and finding that there was sufficient evidence presented at trial from which the jury could conclude, beyond a reasonable doubt, that Johnson possessed the requisite *mens rea* regarding Minor Victim's age).

In addition to his objections regarding the sufficiency of the evidence, Johnson objects to the adjustment because he argues it would doubly penalize him for Minor Victim's age.[22] He argues that the offenses of conviction already incorporate age and, therefore, Minor Victim's age cannot be a factor that makes Minor Victim a "vulnerable victim."[23]

The PSR adopts Johnson's view that Minor Victim's age is already incorporated in the offense guideline and accounts for Minor Victim's vulnerability.[24] And it is the PSR's position that there "is no information to suggest Minor Victim was particularly vulnerable for any additional reasons other than age."[25]

The Court first rejects the contention that Minor Victim's age cannot be considered in determining whether she was uniquely vulnerable because Johnson's offenses of conviction "already charged this very factor."[26] As previously explained, if the evidence demonstrates that Minor Victim's age contributes to her vulnerability in a way not "fully incorporated" in the offense guidelines, consideration of the fact that Minor Victim was sixteen at the time of the offense is appropriate. *Cf. Smith*, 115 F.4th at 377. To the extent that Johnson's argument is a blanket-prohibition on the consideration of age when the underlying conviction includes as an element the victim's minority status, such argument is rejected by Fifth Circuit precedent. *See id.*; *see also Jenkins*, 712 F.3d at 214.

---

[22] R. Doc. No. 189, at 3.
[23] *See id.*
[24] R. Doc. No. 191, at 26.
[25] *Id.*
[26] R. Doc. No. 189, at 3.

The Court agrees with the government that Minor Victim was particularly susceptible to Johnson's criminal conduct relative to other minor victims for reasons not fully captured by her minority. "The vulnerable victim guideline is primarily concerned with the impaired capacity of the victim to detect or prevent crime, or a victim who is less able to resist than the typical victim of the offense of the conviction." *Smith*, 115 F.4th at 376–77. The evidence before the Court demonstrates that Minor Victim was particularly susceptible to Johnson's advances because she was a runaway, had no family or other adult support, and needed money to feed herself.

Courts have found application of the vulnerable victim adjustment appropriate with respect to minor victims with comparable vulnerability. *Cf. Smith*, 115 F.4th at 378 (upholding the district court's application of §3A1.1(b)(1) where the minor victim was a runaway, a ward of the state, thirteen years old, and "her willingness to put herself in danger by engaging in commercial sex was borne out of desperation"); *Richmond v. United States*, No. 15-28, 2019 WL 1499160, at \*5 (E.D. Tex. Apr. 5, 2019) (finding application of §3A1.1(b) was appropriate where the minor victim was seventeen years old, a runaway with no money or resources to support herself, and had a history of sexual assaults).

As for Johnson's knowledge of these vulnerabilities, the preponderance of the evidence before the Court supports that Johnson knew that Minor Victim was a runaway and desperately needed money. Indeed, Johnson told Minor Victim on a Facebook video call that he had "seen a missing person post about her."[27] Johnson's

---

[27] R. Doc. No. 191 ¶ 12.

drive to Mississippi was prompted by Minor Victim telling him that she was "stranded" in Vicksburg.[28] Once in New Orleans, Minor Victim had no means of transportation from Johnson's home, a fact which Johnson attempted to use to barter for additional sex with Minor Victim.[29] The PSR states, and Johnson does not dispute, that Minor Victim "did not have anyone to support her, and she continued speaking with" Johnson after their initial encounter.[30] Johnson paid Minor Victim for sex on two additional occasions after the night he picked her up from Mississippi, which he also does not dispute: on March 22, 2024,[31] and on March 26, 2024.[32] Additionally, Johnson took Minor Victim to a restaurant because she told him she was hungry, and when they arrived at the restaurant, Johnson "asked Minor Victim what she would do in exchange for food."[33] Minor Victim testified at trial that she "understood that [Johnson] would only buy her food if she had sex with him."[34]

These facts support a finding that Johnson knew or should have known that Minor Victim was particularly vulnerable due to the circumstances of their interactions, her runaway status, her food instability, and her acquiescence to

---

[28] *Id.* ¶ 13.

[29] *Id.* ¶ 18 ("Minor Victim asked if the defendant would bring Minor Victim and [her friend] back home, and he refused. Minor Victim offered to pay the defendant to take them home, and he replied, via text, 'I would rather f**k honestly.' When Minor Victim did not agree, the defendant suggested, 'one of y'all can come f**k and you give me half back to take y'all back or just send the 200 back and I take yall back.'").

[30] *Id.* ¶ 19.

[31] The Court recognizes that Minor Victim did not engage in sexual conduct with Johnson as a result of the March 22nd payment for sex. *See id.*

[32] *Id.*

[33] *Id.* ¶ 20. The Court addresses Johnson's objection regarding the reliability of the information in this paragraph of the PSR, *infra*, in Section I(b)(4).

[34] *Id.*

Johnson's advances for sex with him in exchange for money on multiple occasions. *Cf.*

*Smith*, 115 F.4th at 378–79 ("[The minor victim's] minority and economic desperation

were readily apparent from her appearance and the circumstances under which she

and [the defendant] met. Her willingness to engage in the acts that [the defendant]

facilitated served as yet another indicator. And even if her vulnerability was not

apparent at first blush, the amount of time that [the defendant] spent with [the minor

victim] in this context supports a plausible finding that [the defendant] should have

known of her vulnerabilities.").

Accordingly, the Court agrees with the government that application of the

adjustment is proper.

### b.  Johnson's objections

*1.    Johnson's prior convictions are not excluded pursuant to §4A1.2(c)*

U.S.S.G. §4A1.1 provides the points to be assessed for each of a defendant's

prior sentences, and the total of such points determines the defendant's criminal

history category. *See* §4A1.1(a)–(e). Section §4A1.1(c) instructs that one point is added

for "each prior sentence not counted in subsection (a) or (b), up to a total of 4 points

for this subsection."[35]

The PSR assesses Johnson two points, pursuant to §4A1.1(c), for two separate

convictions for possession of marijuana. As to the first conviction, Johnson pleaded

---

[35] Section 4A1.1(a) assesses "3 points for each prior sentence of imprisonment exceeding one year and one month." Section 4A1.1(b) assesses "2 points for each prior sentence of imprisonment of at least sixty days not counted in subsection (a)."

guilty and was originally sentenced to six months of imprisonment.[36] That sentence was suspended and he received one year of probation and paid a $500 fine.[37] As to the second conviction, Johnson pleaded guilty and paid a $300 fine.[38] Johnson objects to the assessment of criminal history points with respect to these two prior possession convictions, arguing they should be excluded pursuant to §4A1.2(c).[39]

Section 4A1.2(c) details the rules for determining which prior sentences are "counted and excluded." *See generally* §4A1.2(c). Section 4A1.2(c)(1) lists certain misdemeanor and petty offenses and those "similar to them, by whatever name they are known" which are counted "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." This list includes, among others, "disorderly conduct or disturbing the peace," "gambling," "driving without a license or with a revoked or suspended license," and "trespassing." *See* §4A1.2(c)(1) (capitalization omitted). Section 4A1.2(c)(2) further lists misdemeanor and petty offenses and those "similar to them, by whatever name they are known" that are "never counted." This list includes, among others, "public intoxication." *See* §4A1.2(c)(2) (capitalization omitted).

Johnson argues that his two prior convictions for possession of marijuana are "substantially similar" to those offenses excluded pursuant to §4A1.2(c), because they

---

[36] R. Doc. No. 191 ¶ 47.
[37] *Id.*
[38] *Id.* ¶ 48.
[39] R. Doc. No. 181, at 1–5.

were "for personal use possession only, were non-violent, involved no distribution, and ultimately resulted in no term of imprisonment."[40] In particular, he asserts that his prior convictions are "arguably similar to public intoxication," which is never counted pursuant to §4A1.2(c)(2).[41] He invokes the Fifth Circuit's multi-factor "common sense" approach for determining similarity, as articulated in *United States v. Hardeman*, 933 F.2d 278 (5th Cir. 1991), and argues that such common sense inquiry counsels in favor of a finding that his prior convictions are similar to the excluded offenses.[42] In the event that the Court determines his prior convictions are "technically countable," Johnson alternatively urges the Court to exclude them because their "inclusion substantially over-represents the seriousness of [his] criminal history."[43]

The government disputes that Johnson's prior convictions of possession of marijuana are sufficiently "similar to" public intoxication, or any of the other listed offenses in §4A1.2(c), such that they should be excluded.[44] First, the government correctly points out that possession of marijuana is absent from both lists under §4A1.2(c).[45] In the government's view, "[p]ossession of marijuana is not an obscure crime, and the Sentencing Commission could have easily included this offense within Section 4A1.2(c) if it had chosen to do so."[46] Next, the government raises that while

---

[40] *Id.* at 2.
[41] *Id.* at 4.
[42] *See id.* at 3–4.
[43] *Id.* at 2.
[44] *See* R. Doc. No. 188, at 2.
[45] *Id.*
[46] *Id.*

12

the Fifth Circuit has not determined whether possession of marijuana is similar to public intoxication for purposes of §4A1.2(c)(2), numerous other courts have found that possession of marijuana is not similar to public intoxication or any other enumerated offense in §4A1.2(c).[47] Finally, it disagrees with Johnson and argues that the Fifth Circuit's "common sense approach" counsels in favor of a finding that possession of marijuana is not sufficiently similar to public intoxication and, therefore, is not excludable.[48]

The PSR rejects Johnson's objection. It notes that although the 2024 Guidelines stated that a "downward departure from the defendant's criminal history category may be warranted . . . [if] [t]he defendant received criminal history points from a sentence for possession of marijuana for personal use, without an intent to sell or distribute it to another person," this provision, like all departures, was removed from the 2025 Guidelines.[49]

The Court agrees that Johnson's prior sentences are not similar to the excluded offenses in §4A1.2(c) and should be counted. Johnson was not sentenced to "a term of probation of more than one year or a term of imprisonment of at least thirty days,"[50] §4A1.2(c)(1)(A), with respect to his two prior possession convictions, and these convictions are not similar to his instant offenses of conviction, §4A1.2(c)(1)(B). Whether the prior possession convictions are excluded by §§4A1.2(c)(1) or (2)

---

[47] *See id.* at 3.

[48] *See id.* at 4–7 (comparing Louisiana's statute for disturbing the peace with Johnson's prior convictions for possession of marijuana).

[49] *See* R. Doc. No. 191, at 26–27 (citing U.S.S.G. §4A1.3 cmt. n.3 (2024)).

[50] *Id.* ¶¶ 47–48.

therefore depends on whether Johnson's possession convictions are "similar to" any of the listed, excluded offenses. *See United States v. Lamm*, 392 F.3d 130, 132 (5th Cir. 2004).

"To determine whether a prior offense is 'similar' to a listed excludable offense" the Fifth Circuit "suggests a common sense approach which relies on all possible factors of similarity." *Id.* (quoting *Hardeman*, 933 F.2d at 281) (internal alterations omitted). These factors include:

> "[A] comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct."

*Id.* (quoting *Hardeman*, 933 F.2d 281); *see also* U.S.S.G. §4A1.2 cmt. n.12.[51] The Court weighs these factors "as a whole," and no one factor carries "dispositive weight." *See Lamm*, 392 F.3d at 132, 134. "Because the Guidelines' default rule for past offenses is one of inclusion, any doubts should be resolved in favor of counting the offense." *United States v. Hernandez*, 634 F.3d 317, 319 (5th Cir. 2011).

The Fifth Circuit has not yet determined whether possession of marijuana is similar to an offense listed in §4A1.2(c)(2). *See United States v. Ventura*, 428 F. App'x

---

[51] The application note explains that "[i]n determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." §4A1.2 cmt. n.12(A).

390, 392 (5th Cir. 2011) ("Whether misdemeanor possession of marijuana is similar to an offense listed in § 4A1.2(c)(2) has not previously been decided by this court."). In *Ventura*, the Fifth Circuit declined to determine whether misdemeanor possession of marijuana is similar to public intoxication because "any error" committed by the district court in not including the possession offenses in the defendant's criminal history "was not plain." *See id.* However, it also noted that other courts had, in contrast with the district court, found that prior offenses of possession of marijuana should be counted. *See id.* (citing *United States v. Russell*, 564 F.3d 200, 206–07 (3d Cir. 2009), *United States v. Collington*, 418 Fed. Appx. 251, 255–56 (4th Cir. 2011), and *United States v. Johns*, 347 Fed. Appx. 240, 242 (7th Cir. 2009)); *see also United States v. Collins*, 600 F. App'x 433, 436 (6th Cir. 2015) (finding no error in the district court's assessment of criminal history points for possession of marijuana); *United States v. Muse*, 311 F. App'x 394, 397 (2d Cir. 2009) (finding the prior conviction for unlawful possession of marijuana was not similar to any excepted offense under §4A1.2(c)); *United States v. Foote*, 705 F.3d 305, 308 (8th Cir. 2013) ("No circuit has held that possession of marijuana (or other drugs) is similar to any of the Guidelines' enumerated exceptions.").[52]

---

[52] This Court also finds notable, though certainly not dispositive, that the Fifth Circuit has more recently held that a defendant's prior California misdemeanor conviction for use of methamphetamine was not "similar to" a conviction for "public intoxication" for purposes of §4A1.2(c). *See United States v. Smith*, 939 F.3d 687, 688–92 (5th Cir. 2019) (finding that the defendant was properly assessed a criminal history point for his prior California misdemeanor conviction for "Use/Under the Influence of a Controlled Substance" because "all of the common-sense factors show differences between (a) Use/Under the Influence of a Controlled Substance and (b) public intoxication laws; (2) other circuits have rejected [the defendant's] arguments

Comparison of Johnson's unlisted possession of marijuana offenses to the "equivalent of the listed offense under [state] law"[53] reveals that they are not similar. Public intoxication falls within Louisiana's disturbing the peace statute, LA. REV. STAT. § 14:103. Pursuant to § 14:103 "disturbing the peace" includes "appearing in an intoxicated condition" "in such manner as would foreseeably disturb or alarm the public." § 14:103(A)(3) (cleaned up). Possession of marijuana in Louisiana falls under LA. REV. STAT. § 40:966(C), which states: "It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance[.]"

Punishment for public intoxication involves a fine of not more than $100 or imprisonment for not more than 90 days, or both. LA. REV. STAT. § 14:103(B)(1). At the time of both of Johnson's prior convictions, the punishment for a first conviction for possession of marijuana differed based on the amount of marijuana in the defendant's possession. *See* LA. REV. STAT. § 40:966(E)(1)(a)(i)–(ii) (eff. June 29, 2015 to July 31, 2016); LA. REV. STAT. § 40:966(C)(2)(a)–(b) (eff. Aug. 1, 2018 to July 31, 2019). For possession of 14 grams or less of marijuana, a first offense of possession was punishable by a fine of not more than $300 and imprisonment of not more than 15 days, or both. For possession of more than 14 grams of marijuana, a first offense of possession was punishable by a fine of not more than $500, imprisonment of not

---

regarding the instant statute; and (3) California has an offense that is more similar to 'public intoxication'").

[53] *See Smith*, 939 F.3d at 689–90 (explaining that the relevant comparison for the common-sense factors involves comparing the unlisted prior offense of conviction with the "equivalent of the listed offense under the relevant State's law" (quoting *Lamm*, 392 F.3d at 132)).

16

more than 6 months, or both. A second conviction for possession of marijuana was punishable by a fine of not more than $1,000 and imprisonment of not more than 6 months, or both. *See* LA. REV. STAT. § 40:966(E)(1)(b); LA. REV. STAT. § 40:966(C)(2)(d). Presently, a first conviction for possession of 14 grams or less of marijuana is punishable by a fine of not more than $100. *See* LA. REV. STAT. § 40:966(C)(2)(a). And a first conviction for possession of more than 14 grams of marijuana is punishable by a fine of $500, imprisonment of not more than 6 months, or both. § 40:966(C)(2)(b).

Louisiana's punishments for public intoxication and possession of marijuana are different, and the punishments for possession of marijuana offenses are more severe than those for public intoxication. Accordingly, the perceived seriousness is greater for possession of marijuana offenses. *Cf. Smith*, 939 F.3d at 690.

The Court next compares the elements of the offenses. A conviction pursuant to § 14:103 requires a showing beyond a reasonable doubt that: (1) the defendant "appeared in an intoxicated condition," and (2) the defendant "acted in such a manner as would 'foreseeably disturb or alarm the public.'" *See State v. Champagne*, 520 So. 2d 447, 451 (La. Ct. App.), *writ denied*, 530 So. 2d 563 (La. 1988); *see also Terrell v. Allgrunn*, 114 F.4th 428, 435 (5th Cir. 2024) (describing the elements of § 14:103(A)). In contrast, possession of a controlled dangerous substance requires that (1) the defendant was in possession of the illegal drug and (2) he knowingly possessed the drug. *State v. Lewis*, 916 So. 2d 294, 299 (La. Ct. App. 2005), *writ denied*, 925 So. 2d 1257 (La. 2006). "Guilty knowledge is an essential element of the crime of possession

17

of contraband." *Id.* The elements of the offenses differ and, notably, the offense of possession of marijuana has a *mens rea* element. *See Collins*, 600 F. App'x at 436.

With respect to the fourth common-sense factor, "the level of culpability involved," §4A1.2 cmt. n.12, "[o]ffenses which have a mens rea element typically carry with them a higher level of culpability than those that do not," *id.* Furthermore, the Fifth Circuit found in *Smith* that possession of an illegal substance, in that case, methamphetamine, involved a greater level of culpability than public intoxication because possession statutes involve "acquisition[] of an illegal substance," whereas "classic public intoxication usually involves abuse of alcohol, which is a *legal* substance." *See* 939 F.3d at 691 (emphasis in original) (internal alterations omitted). This Court finds that this reasoning likewise applies for possession of marijuana, an illegal substance.

As for the final factor, the "degree to which the commission of the offense indicates a likelihood of recurring criminal conduct," the Fifth Circuit noted in *Smith* that addiction can be a "correlated problem for defendants who use either alcohol or illegal drugs." 939 F.3d at 691. However, it also found notable that the statute at issue in that case "expressly provide[d] for repeat offenders." *Id.* That is also true of Louisiana's possession of marijuana statute. *See* § 40:966(C).

Weighing these factors "as a whole," *Lamm*, 392 F.3d at 134, and considering that "any doubts should be resolved in favor of counting the offense," *Hernandez*, 634 F.3d at 319, the Court finds that the PSR properly counted Johnson's two prior possession convictions. This objection is overruled.

*2.    The repeat dangerous sex offender against minors enhancement, §4B1.5(b)(1), is
properly applied to Johnson*

The PSR applies a five-level enhancement to Johnson's offense level pursuant

to §4B1.5(b)(1) because it found that Johnson is a "repeat and dangerous sex offender

against minors." §4B1.5(b)(1). Section 4B1.5(b) states:

> In any case in which the defendant's instant offense of conviction
> is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline
> applies, and the defendant engaged in a pattern of activity involving
> prohibited sexual conduct:
>     The offense level shall be 5 plus the offense level determined
> under Chapters Two and Three.

Johnson does not dispute that his instant offenses of conviction are covered sex

crimes.[54] Rather, he argues that "the government failed to prove that on at least two

separate occasions [he] engaged in prohibited sexual conduct with a minor."[55] He

submits that the multiple instances demonstrated at trial between himself and Minor

Victim are not sufficient to constitute "repeat" offenses because "the allegations

involving the minor victim in this case were part of an ongoing criminal episode."[56]

Johnson additionally argues that his statement to law enforcement that he has

previously had sex with minors has not been substantiated by other witnesses at trial

and, therefore, cannot by itself demonstrate a "pattern."[57]

---

[54] *See* R. Doc. No. 181, at 5–8; *see also United States v. Sadeek*, 77 F.4th 320, 326 (5th Cir. 2023) (stating that enticement of a minor in violation of § 2422(b) is a "covered sex crime"); *United States v. Watts*, 834 F. App'x 907, 914 (5th Cir. 2020) ("§ 1591 offenses are covered sex crimes for purposes of the pattern-of-activity enhancement." (citing U.S.S.G § 4B1.5 cmt. n.2 (A)(iv))).

[55] *See* R. Doc. No. 181, at 5–6.

[56] *Id.* at 6.

[57] *Id.* at 7.

19

Finally, Johnson contends that the application of §4B1.5 constitutes "double counting" because the PSR already recommends a specific offense enhancement pursuant to §2G1.3(b)(4)(A) based on the fact that "the offense involved the commission of a sex act or sexual contact."[58] According to Johnson, the enhancement from §4B1.5 therefore "adds five levels on top of an already significantly enhanced offense level based on similar conduct characteristics."[59] He urges the Court to decline applying the enhancement to "avoid disproportionate punishment."[60]

The government, in contrast, contends that there is "overwhelming evidence" supporting application of this enhancement; for example, the evidence that Johnson engaged in prohibited sexual conduct with Minor Victim on at least two occasions.[61] It asserts that there is no support for Johnson's argument that repeated victimization of Minor Victim in connection with the instant offense cannot qualify him for application of the enhancement merely because such instances were "part of an ongoing criminal episode."[62] In fact, it notes that the Fifth Circuit has recently upheld, in *United States v. Sadeek*, 77 F.4th 320, 327 (5th Cir. 2023), the application of § 4B1.5 in a "comparable situation."[63]

It further argues that other evidence at trial additionally supports the enhancement, such as the evidence that he attempted to engage in prohibited sexual

---

[58] *Id.*; *see also* §2G1.3(b)(4)(A).

[59] R. Doc. No. 181, at 7–8.

[60] *Id.* at 8.

[61] R. Doc. No. 188, at 8.

[62] *Id.* (quoting R. Doc. No. 181, at 6).

[63] *Id.*

conduct with a second minor victim, who testified at trial, and the evidence of his own confession to law enforcement upon arrest that he had previously had sex with minors.[64]

The application notes to §4B1.5(b) undermine Johnson's argument that the requisite "pattern" cannot be established from conduct that occurred during the instant offense. Application note 4(B) explains that a defendant "engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." §4B1.5(b) cmt. n.4(B). "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) *without regard to whether the occasion* (I) *occurred during the course of the instant offense*; or (II) resulted in a conviction for the conduct that occurred on that occasion." *Id.* (emphasis added).

Furthermore, the government is correct that the Fifth Circuit's decision in *Sadeek* is instructive. In *Sadeek*, the defendant's offenses of conviction involved his sexual assault of a minor victim over the course of two consecutive days. *See Sadeek*, 77 F.4th at 323. The Fifth Circuit upheld the application of §4B1.5(b), dismissing the defendant's argument that application is inappropriate where the "separate occasions of prohibited conduct occurred too close together in time." *Id.* at 327. It held that "the commission of distinct sexual assaults constitute 'separate occasions,' whether on the same or different days, for purposes of § 4B1.5(b)(1)." *Id.* Notably for purposes of resolving Johnson's objection, it upheld application of the enhancement to the

---

[64] *Id.* at 9–10.

defendant in *Sadeek* based upon the multiple instances of prohibited conduct that underlaid his offenses of conviction. *Id.* It reasoned:

> In this case, Sadeek first met [the minor victim] in the backyard of her home where he kissed and groped her, and then forced her to perform oral sex. Later that evening, after leaving and returning with food, Sadeek pushed [the minor victim] against a wall and forcibly rubbed his penis against her. The following day, after leaving to spend the night at a hotel, Sadeek came into [the minor victim's] home, threw her on the bed and raped her multiple times. At a minimum, the first encounter involving forced oral sex and third encounter the following day involving multiple instances of rape qualify as two "separate occasions" under § 4B1.5(b)(1), as the guideline requires.

*Id.* In other words, the Fifth Circuit found that the separate occasions in which the defendant engaged in prohibited sexual conduct with the minor victim of the offense of conviction were sufficient to establish a "pattern" as contemplated by §4B1.5(b)(1).

The evidence elicited at Johnson's trial, and reflected in the PSR, establishes that he engaged in prohibited sexual conduct with Minor Victim on at least two separate occasions.[65] The Court finds this evidence is sufficient to support application of the enhancement.

Even if the Court were to accept Johnson's argument that the conduct underlying his offenses of conviction constitutes only one "occasion" because the offenses "involving the minor victim in this case were part of an ongoing criminal episode," Johnson's admission to FBI agents upon his arrest that he has had sex with minors in the past establishes at least a second occasion in which Johnson engaged in prohibited sexual conduct.[66] "A defendant's uncorroborated admission, if reliable,

---

[65] R. Doc. No. 191 ¶¶ 18–20.

[66] *Id.* ¶ 23.

may be the sole basis for a sentencing finding." *United States v. Partaka*, 832 F. App'x 912, 913 (5th Cir. 2021). Johnson has provided no evidence to undermine the findings of the PSR or demonstrate that his admission to law enforcement was "materially untrue, inaccurate or unreliable." *Cf. id.*; *see also United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) ("Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is materially untrue, inaccurate or unreliable." (internal citations and quotations omitted)).

Finally, with respect to Johnson's double counting argument, "the Sentencing Guidelines do not forbid all double counting," rather, "[d]ouble counting is impermissible only when the particular guidelines in question forbid it." *United States v. Godfrey*, 25 F.3d 263, 264 (5th Cir. 1994). Johnson acknowledges this.[67] Neither §2G1.3(b)(4)(A) nor §4B1.5(b) specifically forbid double counting. More importantly, the PSR's application of §2G1.3(b)(4)(A) and §4B1.5(b) do not implicate the same conduct; §2G1.3(b)(4)(A) applies because Johnson's offenses involved the commission of a sex act or sexual contact, whereas §4B1.5(b) applies because Johnson has engaged in a pattern of prohibited sexual conduct with Minor Victim and other minors. For these reasons, the Court overrules Johnson's second objection and adopts the PSR's application of the enhancement.

---

[67] *See* R. Doc. No. 181, at 8 (citing *Godfrey*, 25 F.3d at 264).

### 3.    *Johnson unduly influenced Minor Victim*

Johnson objects to the PSR's application of the enhancement in §2G1.3(b)(2) and §2G1.3(b)(3), arguing that they "double count" the same conduct.[68] He also argues that there is insufficient evidence to demonstrate that §2G1.3(b)(2) applies.[69]

Section 2G1.3(b) provides enhancements for specific offense characteristics. The relevant enhancements in §2G1.3(b) state:

> (2)    If (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) *a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct*, increase by 2 levels.

> (3)    If the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor, increase by 2 levels.

§2G1.3(b)(2)–(3) (emphasis added). The application notes state that in determining whether a participant "unduly influenced a minor" for purposes of §2G1.3(b)(2)(B), "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." §2G1.3(b)(2) cmt. n.3(B). The application note further provides that:

> In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

---

[68] *Id.* at 9.
[69] *Id.*

24

Johnson suggests that application of both §2G1.3(b)(2) and §2G1.3(b)(3) would be impermissible double counting, because the PSR states in its reasons for applying §2G1.2(b)(2) that Johnson "sent Minor Victim several text messages to persuade her when she refused sexual activity."[70] He asserts that this is the "same behavior" that supports the enhancement of §2G1.3(b)(3) in the PSR, which purports to apply §2G1.3(b)(3) because Johnson "communicated with Minor Victim via Facebook and text messages to arrange meetings and engage in sexual activity."[71]

Johnson also argues that he did not exert the kind of influence over Minor Victim necessary to support the enhancement.[72] He states that he "did not threaten her, was not psychologically manipulating her, and was not someone in a position of trust to the minor victim."[73] Also, Johnson submits that when Minor Victim first arrived in New Orleans, she was "with an adult friend . . . and entirely out of Mr. Johnson's sphere of influence after the first day in New Orleans, having been dropped off at the house of someone she considered a relative."[74]

Johnson directs the Court to *United States v. Pringler* as an example of the kind of influence that he contends is sufficient to apply the enhancement.[75] *See* 765 F.3d 445 (5th Cir. 2014). In *Pringler,* the Fifth Circuit found no clear error in the district court's application of §2G1.3(b)(2). In that case, the sixteen-year-old minor

---

[70] R. Doc. No. 191 ¶ 36.
[71] *Id.* ¶ 37.
[72] R. Doc. No. 181, at 9.
[73] *Id.*
[74] *Id.*
[75] *Id.*

victim had testified to her fear of leaving the defendant. *Id.* at 456. The evidence also demonstrated that the defendant had employed known "control mechanisms," such as physically abusing his girlfriend in front of the minor victim and having a sexual relationship with the minor victim. *Id.* (noting that the government's evidence supported that "physical abuse of one person in the presence of another can be used to control the person who is watching" and that "sexual relations between a pimp and his prostitute is another control mechanism"). Johnson argues that comparison of his conduct to that of the defendant in *Pringler* reveals that application of the enhancement to him is inappropriate.[76]

The government disagrees. It notes that the rebuttable presumption articulated in application note 3(B) applies in this case, because Johnson was 36 years old when he committed the instant offenses and Minor Victim was 16 years old.[77] The government contends that the evidence likewise supports application of the enhancement.[78] Namely, the evidence that Johnson: "threatened to strand [Minor Victim] without a place to go or means of transportation in an unfamiliar city after driving her several hours from another state;" "made her stand outside of his home in the rain;" manipulated her by "repeatedly begging her to have sex with him [and] telling her she was not being 'fair' to him;" and used his position as a high school teacher to "gain her trust."[79]

---

[76] *See id.*
[77] *See* R. Doc. No. 191 ¶¶ 10–11, 36 (noting that Johnson was 20 years older than Minor Victim).
[78] R. Doc. No. 188, at 12.
[79] *Id.*

26

The government also disputes that this conduct is double counted.[80] The enhancement for Johnson's use of a computer, §2G1.3(b)(3), is based upon his use of such computer to "facilitate the travel of [Minor Victim] as well as to persuade, induce, and entice her to engage in commercial sex." Whereas, the conduct captured by §2G1.3(b)(2) is Johnson "leveraging his age and power to manipulate [Minor Victim] in person and over messaging services."[81] Regardless, it reminds Johnson that impermissible double counting occurs only when the Guidelines explicitly prohibit it, which is not the case with respect to these enhancements.[82]

The PSR declined to adopt Johnson's objection.[83] It reasoned that the evidence presented at trial demonstrated that Johnson had contact with Minor Victim via text message and offered in those conversations to "'help' her by picking her up in Mississippi and bringing her to his home in New Orleans."[84] The PSR also found that "[o]nce they arrived [in New Orleans] and Minor Victim did not want to engage in sexual conduct, the defendant sent Minor Victim several text messages requesting sex and offered to pay Minor Victim."[85] It concluded that, given these facts, application of both enhancements is appropriate.[86]

The Court agrees with the conclusions of the government and made by the PSR. First, the rebuttable presumption applies in this instance, as Johnson is twenty

---

[80] *Id.* at 13.
[81] *Id.* at n.1.
[82] *Id.* at 12–13.
[83] R. Doc. No. 191, at 28–29.
[84] *Id.* at 29.
[85] *Id.*
[86] *Id.*

27

years older than Minor Victim.[87] Consequently, pursuant to Application note 3(B), "some degree of undue influence can be presumed." The only evidence Johnson offers to rebut this presumption is the fact that Minor Victim was with an adult friend when he picked her up in Mississippi and brought her to New Orleans and that she was, after that first day, allegedly "entirely out of [his] sphere of influence."[88] He otherwise unpersuasively submits that the influence he did assert over Minor Victim was not enough to justify application of the enhancement.[89]

Johnson had sex with Minor Victim on multiple occasions, which the Fifth Circuit has recognized is a control mechanism and a factor supporting that the voluntariness of the minor victim's behavior was compromised. *See Smith*, 115 F.4th at 375–76 ("Non-consensual sex with a minor [the defendant] knew was thirteen would be worse. But that does not mean that the fact that he had sex with [the minor victim] is not a strong data point in the case for compromised voluntariness."); *Pringler*, 765 F.3d at 456. Moreover, Johnson repeatedly leveraged Minor Victim's situation as a runaway without adult support or money to try and, at least twice successfully, persuade her to have sex with him. *Cf. Smith*, 115 F.4th at 375 (including as a factor that undermined voluntariness of the victim's behavior that the minor victim "was a ward of the state in need of money"); *United States v. Brooks*, 610 F.3d 1186, 1199 (9th Cir. 2010) (holding that "[e]ven without the rebuttable presumption, the record support[ed] the conclusion" that the defendant unduly

---

[87] R. Doc. No. 191 ¶¶ 10–11.
[88] R. Doc. No. 181, at 9.
[89] *See generally id.* at 8–9.

influenced the victims where "the girls had no money, no job and, as runaways, nowhere to live"). The facts that Minor Victim was mostly physically away from Johnson after that first day and had at least one adult friend do not rebut the evidence demonstrating that Johnson's influence over Minor Victim "compromised the voluntariness" of her behavior. §2G1.3(b)(2) cmt. n.3(B). Accordingly, the Court finds application of the enhancement pursuant to §2G1.3(b)(2) is proper.

Furthermore, the Court agrees that §2G1.3(b)(2) does not necessarily implicate the same conduct captured by §2G1.3(b)(3). *United States v. Garcia-Gonzalez*, 714 F.3d 306, 315 (5th Cir. 2013) (finding no error where the district court applied two enhancements because "the enhancements d[id] not necessarily implicate the same conduct"). The latter accounts for Johnson's use of a computer to "communicate directly" with Minor Victim to "persuade, induce, entice, coerce, or facilitate" her "travel . . . to engage in prohibited sexual conduct." §2G1.3(b)(3); §2G1.3(b)(3) cmt. n.3. The former accounts for the full scope of the undue influence Johnson asserted over Minor Victim, not exclusively through their text message conversations. *See generally* §2G1.3(b)(2). Additionally, §§2G1.3(b)(2) and (3) do not expressly forbid double counting. *United States v. Lynde*, 428 F. App'x 334, 338 (5th Cir. 2011). The Court overrules this objection.

### 4. *Evidence in the PSR provided by Minor Victim*

Johnson's final objection is to information contained in paragraphs 12 and 20 of the PSR. He argues that the Court may not rely on these paragraphs for any sentencing determinations because "they are based solely on information provided

by" Minor Victim "and were not supported by testimony [of other witnesses] or any other evidence produced at trial."[90] The information in the paragraphs is as follows:

> 12.    In March 2024, the defendant met Minor Victim on social media. The defendant and Minor Victim exchanged messages and video calls through Facebook. During a Facebook video call with the defendant, Minor Victim disclosed her age. The defendant responded that he was aware of Minor Victim's age because he had seen a missing person post about her.
>
> . . .
>
> 20.    On one occasion, Minor Victim told the defendant she was hungry, and the defendant offered to take Minor Victim to a restaurant. When they arrived at the restaurant, the defendant asked Minor Victim what she would do in exchange for the food. Minor Victim understood that the defendant would only buy her food if she had sex with him. Minor Victim declined and had someone else pick her up from the restaurant.

The government argues that the evidence in these paragraphs, which Minor Victim testified to at trial, was "supported by other trial evidence" and that, regardless, Johnson has "offered no reason to believe that any of [Minor Victim's] trial testimony was materially untrue or unreliable."[91]

The PSR was not adjusted in light of Johnson's objection. The PSR notes that the probation officer has "not received tangible evidence or documentation in support of the contention that the information contained in [these paragraphs] is unreliable or erroneous."[92] The PSR also suggests that the Court need not resolve this objection because "the factual details of Paragraphs 12 and 20 contained in the Offense

---

[90] R. Doc. No. 181, at 9.
[91] R. Doc. No. 188, at 14.
[92] R. Doc. No. 191, at 29.

Conduct section of the Draft PSR ha[ve] no impact to the defendant's advisory guideline range."[93]

The Court disagrees that resolution of this objection will not affect Johnson's advisory guideline range, as the Court relied on the information in these paragraphs to support application of certain enhancements already discussed.[94] Nevertheless, the Court overrules this objection.

"Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing." *United States v. Rudolph*, 103 F.4th 356, 360 (5th Cir. 2024). "The district court may adopt the facts contained in a PSR without further inquiry if two factors are met." *Id.* (quotations and alterations omitted). "First, those facts must have an adequate evidentiary basis with sufficient indica of reliability." *Id.* (quotations and alterations omitted). "Second, "the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *Id.*

The "mere inclusion in the PSR does not convert facts lacking an adequate evidentiary basis with sufficient indicia of reliability into facts a district court may rely upon at sentencing." *Id.* at 3360–61 (quotations omitted). "And though 'mere objections' by the defendant are generally insufficient to serve as rebuttable evidence that the information in the PSR is unreliable, 'such objections may sufficiently alert the district court to questions regarding the reliability of the evidentiary basis for the

---

[93] *Id.* (referencing FED. R. CRIM. P. 32(i)(3)(B)).
[94] *See supra* Section I(a) and I(b)(3).

facts contained in the PSR.'" *Id.* at 361 (quoting *United States v. Harris*, 702 F.3d 226, 231 n.3 (5th Cir. 2012)). Of course, as it pertains to application of sentencing enhancements, the government ultimately "has the burden of proving by a preponderance of the evidence that the enhancement is warranted." *Id.*

Minor Victim testified at trial to the information in these paragraphs. The Court observed Minor Victim at trial and found her to be credible. *United States v. Burgess*, 89 F. App'x 865, 866 (5th Cir. 2004) ("[T]he district court's decision on this matter was based at least partially on a credibility determination that this court will not second guess."); *United States v. Salazar-Valencia*, 716 F. App'x 288, 292 (5th Cir. 2018) (upholding the district court's reliance on "the testimony of witnesses at his trial, and their statements reported in the PSR" because the defendant "presented no contrary evidence at sentencing, and the court observed the trial testimony of the witnesses and found them credible"). The other evidence at trial, notably, Johnson's phone search history for Minor Victim's Facebook profile and his own statement to law enforcement upon arrest regarding taking Minor Victim to a restaurant and arguing with her about paying for food, strengthens the veracity of the information in these paragraphs. The jury observed and convicted Johnson based on the evidence presented at trial. The Court is satisfied that the evidence in these paragraphs of the PSR has an "adequate evidentiary basis with sufficient indica of reliability." *Rudolph*, 103 F.4th at 360.

Furthermore, Johnson presents no evidence to show that the information in these paragraphs is unreliable or untrue. *Id.* Nor does Johnson provide any reason

for this Court to disbelieve Minor Victim's testimony. *Cf. United States v. McCuin*, 553 F. App'x 425, 426 (5th Cir. 2014) ("The [district] court considered, but was not swayed by, the minor inconsistencies in the girl's account, determining that none called into question the veracity of the core of her testimony.").

For these reasons, the Court overrules this objection.

## II.    CONCLUSION

**IT IS ORDERED** that the government's objection is **SUSTAINED** and that Johnson's objections are **OVERRULED**.

New Orleans, Louisiana, April 29, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**